## Case No. 17,530.

### WHITCOMB et al. v. PHOENIX MUT. LIFE INS. CO.

[11 Chi. Leg. News. 408; 8 Reporter, 642; 8 Ins. Law J. 624.] [1]

Circuit Court, D. Massachusetts. July 3, 1879.

LIFE INSURANCE — GENERAL AGENTS — POWERS — LOCUS OF CONTRACT.

1. The policy issued by a life company of another state to a citizen of Massachusetts, provided that it should be void unless the premium was paid when due at the office of the company, or to an agent upon the production of a receipt signed by the president or secretary; also that it should take effect when countersigned by the agent in Massachusetts, who was also required to countersign receipts. *Held*, that though the agent was a general agent in the sense of the Massachusetts statutes requiring the appointment of a general agent to accept process, and who should give bonds, this has nothing to do with his power to bind the company, but only his power to represent the company in securing the enforcement of the contract.

2. The countersigning by the agent was chiefly intended as proof that premiums had been paid to him. As he was not authorized to refuse to countersign, the act was purely ministerial. The fact that the policy was forwarded to the agent and delivered by him, but not countersigned, was not material. The policy took effect from its delivery, and there can be no just distinction between the two acts; both are intended to effect substantially the purpose of getting the policy into the proper hands and securing the premium.

3. The contract was not a Massachusetts contract within the provisions of, the non-forfeiture law of that state, and the prohibition to make such a contract as this one, cannot affect the contract as a legislative command.

[Cited in Smith v. Mutual Life Ins. Co., 5 Fed. 584.]

[Questioned in Holmes v. Charter Oak Life Ins. Co., 131 Mass. 66.]

This case was submitted upon agreed facts. The defendant company is chartered by the laws of Connecticut, having its office and principal place of business at Hartford, where all applications are sent and accepted or rejected. It had a general agent in Worcester, Massachusetts, duly established in accordance with the laws of Massachusetts, through which it transacted business in said commonwealth. In May, 1874, application was duly made by Benjamin F. Whitcomb to the defendant company through said general agency for a policy of insurance upon his life. The application was sent by said general agent to the company at Hartford, and was accepted by the company at said Hartford, in form as set forth in the policy, and under said date, the company issued said policy. It was signed by the president and secretary at Hartford and sent to its general agency at Worcester, by whom it was countersigned and delivered on payment to him of the premium then due. The policy is dated at Hartford, May 18, 1874, and countersigned by D. W. Bartlett, general agent,

[1] [8 Reporter, 642, contains only a partial report.]

on the same day. It assures the life of B. F. Whitcomb for the benefit of his wife and children, the present plaintiffs, in the sum of $5,000, in consideration of a payment of $104.10 made on that day, and of the annual payment of a like amount on or before the 18th of May in each year. It contains a promise by the company that if after three annual premiums have been paid, the policy shall be surrendered while in force, a new policy will be issued for the whole amount of even dollars received by the company, (subject to any indebtedness on account of premiums,) without further charge, except interest on all indebtedness of the policy. The next paragraph but one has the condition that if the said premiums shall not be paid at the office of the company, or to an agent on his producing a receipt signed by the president or secretary, on or before the date above mentioned, the company shall not be liable to pay the sum insured, or any part thereof, and the policy shall cease and determine. The policy was to take effect when countersigned by D. W. Bartlett, agent at Worcester. The premium due 18th May, 1875, was paid to the agent at Worcester upon a receipt signed by the secretary and countersigned by the agent. On the 20th of April, 1876, notice was sent by Bartlett, the agent, to B. F. Whitcomb, that the next payment upon the policy would fall due before noon on the 18th day of May, 1876, and stating the amount, which was arrived at by charging the premium and interest on a premium note and deducting a dividend. Payment of this dividend was never made, and B. F. Whitcomb died November 25, 1876.

The only defense arising under the agreement of the parties was the failure to pay the annual premium, and whether this involved a forfeiture was agreed to depend upon whether the rights of the parties were governed by the "nonforfeiture law" of Massachusetts. By the General Statutes of Massachusetts (chapter 58, § 68), every foreign insurance company doing business in the state must appoint a citizen thereof, resident therein, a general agent, upon whom all lawful processes against the company may be served, with like effect as if the company existed in the state. By that and later statutes, the agent was required to give certain bonds, make certain deposits, certain annual returns, etc., etc. The statute of 1861 (chapter 186) provides that no policy of insurance on life, thereafter insured by any company chartered by the laws of the commonwealth, shall be forfeited or become void by the non-payment of premium thereon, any farther than regards the right ·of the insured to have it continued in force beyond a certain period, to be determined by ascertaining the net value of the policy according to the mode there pointed out; and after deducting any indebtedness to the company, four-fifths of what remains shall be considered a net single premium of temporary insurance ac-

cording to the age of the party at the time of the lapse. If the death occurs within the term of temporary insurance covered by the value of the policy, and no other condition of the insurance has been violated, the company shall be bound to pay the amount insured as if there had been no lapse, anything in the policy to the contrary notwithstanding, provided notice and proof shall be submitted to the company within ninety days after the decease. The statute of 1872 (chapter 325, § 7) declares that "all corporations, associations, partnerships or individuals, doing business in this state under any charter, compact, agreement or statute of this or any other state, involving an insurance, guaranty, contract or pledge for the payment of annuities or endowments, or for the payment of moneys to families, or representatives of policy or certificate holders, or members, shall be considered and deemed to be life insurance companies within the meaning of the laws relating to life insurance within this state, and shall not make any such insurance, guaranty, contract or pledge therein, or to or with any citizen or resident of this state, which shall not distinctly state therein certain things, including the period of continuance, the amount of premiums, etc., nor excepting in accordance with the conditions and restrictions of the statutes now or hereafter regulating the business of life insurance; provided nothing in this section shall be held to conflict with the provisions of chapter 186 of the act of 1861."

I. T. Haague, for plaintiffs.
Henry D. Hyde, for respondent.

LOWELL, District Judge. The brief for the plaintiff is prepared with great ability and learning, and I have examined it with care; but many of the points taken in it are concluded by the exhaustive and binding judgment of Mr. Justice Clifford, given in this court, October 7, 1878, in Desmazes v. Mutual Benefit Life Ins. Co. [Case No. 3,821], which will save me from elaborating those points. In so far as this case differs from that in its facts, some observations will be necessary. It is plain that Bartlett, the agent of the company, called in the agreed statement a general agent, is such, in the sense of the statutes of Massachusetts, as the context of the agreed facts show, which name has nothing to do with his power to bind the company by contract, but only his extensive power and obligation to represent the company in securing the enforcement of the contract when the time comes to enforce it. His only functions appear to have been to forward applications, and if they were accepted, to countersign and deliver the policy, and receive the first premium, and if the company chose to send him receipts for the subsequently accruing annual premiums he was to countersign and deliver them when he received the payment of the premiums.

From the fact that he countersigned receipts as well as policies, it is evident, I think, that the signature was chiefly intended to facilitate the proof of the fact that the premium had been paid, and paid to him, and thereby to lessen the risk of misapprehension in any accounting between the assured and the company; and more especially between the agent and the company. It does not appear that he had any power to alter the contract in the slightest particular, nor to refuse to countersign or deliver either policy or receipts, if the several premiums were tendered him in due time; and I can conceive of no purpose in the countersigning, over and above the delivery, except for the preservation of written evidence, as I have pointed out.

The question argued is, whether this was a Massachusetts contract. No doubt the loss, if there should be one, was to be settled according to the laws of Connecticut, though the action might arise in Massachusetts by virtue of the statute above referred to. The dividend which the insured received in part payment of his first annual premium was made, I suppose, in conformity to the law of Connecticut, and the assured was a member of the company, with all the benefits of those laws. The premium was payable at Hartford, unless the company chose to appoint an agent to receive it in Massachusetts, and if they made such an appointment they could revoke it at pleasure, though after the appointment had been made known to the assured, they could not claim a forfeiture for his failure to pay at Hartford, if he was ready to pay to the agent here, unless they had reasonably notified him of the change. Insurance Co. v. Davis, 95 U. S. 425; Insurance Co. v. Eggleston, 96 U. S. 572. Mr. Justice Clifford decided that such a contract was to be governed by the law of Connecticut, in that case of New Jersey. The only differences of fact are, that in the agreed facts of that case, the agent was not called a general agent. but it is plain that he was such under the law of Massachusetts. The other. and at first sight more striking, difference is, that the policy was sent by mail to the agent. and was by him delivered, but not countersigned. Upon reflection I do not esteem this difference to be material. The contract in that case took effect by delivery in Massachusetts, and in this by being countersigned and delivered in the same state; the mere fact of the countersigning for the purposes and under the circumstances already referred to, has no more effect upon the contract itself than the delivery alone. Two cases have been cited in which it was held that this fact stamped a local character upon the contract, and I should feel much hesitation in differing from those very able judges who made those decisions, were I not aided and instructed by the Case of Desmazes. But those decisions were placed upon reasoning which would apply

equally to delivery by an agent within the state, and that point has been concluded by the decision of this court. That there can be no just distinction drawn between a delivery and countersigning and delivery, I cannot for a moment doubt; one is as much a mere ministerial act as the other, and both are intended to effect substantially the purpose of getting the policy into the proper hands and securing the due and prior payment of the first premium, to which is simply superadded, by the signature of the agent, written evidence of his act and of his responsibility.

The statute of 1872 is perhaps broad enough to cover this case or any other in which a citizen or resident of Massachusetts contracts with any other citizen or corporation of this state. whether the contract is made here or elsewhere. and any contract in which an agent here of a foreign insurer, takes any part whatever; but if the contract was a Connecticut contract, I understand Mr. Justice Clifford to say, and I decide, that the law of Massachusetts of 1872 does not enter into and make a part of it, as matter of contract, and that the prohibiting words of the law forbidding the parties to make such a contract as they have made in this case. cannot have effect upon the contract as a legislative command or forced construction. Whether the legislature of Massachusetts might not revoke the permission for foreign companies to have agents here unless they conformed to the statute, is quite a different question.

After opportunity has been given to the plaintiffs to accept the rulings of law, judgment is to be entered for the defendants.