PROVIDENT SAV. LIFE ASSUR. SOC. OF NEW YORK v. DUNCAN et al.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1902.)

No. 1,008.

LIFE INSURANCE—FORFEITURE FOR NONPAYMENT OF PREMIUM—ESTOPPEL.

The holder of a life insurance policy which provided that premiums might be paid to an agent of the company, but only in exchange for the company's receipt, was notified by the company that the receipt for a premium had been sent to a certain bank, and that payment could there be made. On the last day for such payment it was found that, by direction of the company, the bank had previously returned the receipt. There was no other agent in the place who was authorized to receive payment, and the company refused to accept it thereafter without a health certificate, which could not be furnished, and the premium was not paid. In an action on the policy after the death of the insured, the only defense was that of forfeiture for nonpayment of such premium. The jury found for plaintiff, under instructions charging that such a verdict could only be returned in case it was found that payment of the premium was prevented solely by defendant's withdrawal of the receipt, and there was evidence which supported such a finding. *Held*, that defendant, having, in violation of its duty under the contract, withdrawn the receipt, and thus prevented payment of the premium except on a condition which could not be complied with, and of which fact the evidence tended to show it had previous knowledge, was estopped to claim a forfeiture because the payment was not made or tendered.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

This was an action upon a policy of life insurance issued by the Provident Life Assurance Society upon the life of Wm. M. Duncan for $10,000, and payable to Mrs. Carrie E. Duncan, wife of the assured. The policy was issued September 8, 1897. The annual premium was $807. Among other matters, the policy contained the following provision: "All premiums are

due and payable in advance at the office of the society, in the city of New York. They may, however, be paid to an authorized agent of the society on or before the dates when due, but only in exchange for a receipt, and countersigned by such agent. A grace of thirty days will be allowed in the payment of premiums hereafter due on this policy: provided, always, that, whenever advantage is taken of this grace, interest at the rate of five per cent. per annum shall be paid to the society for the time deferred." The first renewal premium was due September 8, 1898; but, as a consequence of this grace provision, the insured had until and including October 8, 1898, in which to pay same. The assured died in March, 1899, without having ever paid this renewal premium. This action is brought upon the policy, for the use of Mrs. Carrie E. Duncan individually, and for the use of W. D. Talbot, to whom one-half of the policy had been assigned October 10, 1898, in pursuance of a prior parol agreement by which the assignee undertook to pay the whole of the first renewal premium and one-half of each recurring premium in consideration of a one-half interest in the policy when it should become a claim. The sole defense made by the society was that the policy had been forfeited by the nonpayment of the first renewal premium, due October 8, 1898. The official receipt for the first renewal premium had been placed by the society in the American National Bank, at Nashville, prior to September 8, 1898, and notice had been duly given to the assured that it could be paid there. A few days prior to October 8, 1898, the last day of grace, and without any notice to the assured, this renewal receipt was returned by the bank to Boswell & Buckley, general agents for the society at Cincinnati, Ohio. The agents of the company at Nashville, October 8, 1898, were F. L. McKernon and Frank Pryor; the latter being a subagent or soliciting agent under McKernon. There was evidence tending to show that it was the duty of both McKernon and Pryor to look after collections of renewals due at Nashville, by urging on the assured the payment of such renewal premiums, and that both had an interest in the payment of renewals, by way of a commission on collections of renewals at Nashville upon policies issued within a limited date. But neither had any authority to collect such renewal, or to extend the time of payment. Both McKernon and Pryor, the Nashville agents of the society, were informed prior to October 8, 1898, of the arrangement by which Talbot was to pay the renewal premium due October 8, 1898. In explanation of the failure to pay that renewal premium, Mr. W. D. Talbot testified as follows: "Q. State what occurred, and all about it. A. Mr. Pryor came to my office on Saturday, the 8th day of October, 1898, to collect the premium on the policy. I reached for a check to make the payment, at the same time asking for the receipt, in order to get the exact amount to be paid; and I also repeated, 'I don't want to give any note for part of the premium,'—that I wanted to pay it all cash. Mr. Pryor said the receipt was on the notice, and I said that was the first time I ever knew the receipt to be on the notice, and he said all he had to do was to countersign it. On examination he found that the receipt was not on the notice. He then said: 'The receipt is down at the bank. I will go down and get it.' He left my office, and in a short time returned and said: 'The bank has returned that receipt to Cincinnati.' I think he said Cincinnati, but I would not be positive. Q. Returned it to some place? A. To the manager at Cincinnati, I understood it; and he said: 'I will telegraph for it, and bring it to you Monday.' I said: 'You take the check now, and bring me the receipt hereafter.' He said: 'That is all right. I will telegraph for it, and bring it Monday.' He started to go out of the office, and I said: 'Here, Pryor, if it will make a particle of difference, you take the check, and bring me the receipt hereafter.' He said: 'That is all right. I will telegraph for it, and bring it up Monday.' He then left my office." There was evidence tending to show that either McKernon or Pryor wired on Saturday, October 8, 1898, the society's general agents at Cincinnati to return the Duncan renewal receipt, and that this wire was received sometime during the afternoon of October 8th. Instead of wiring a reply, the general agents wrote on the same day to McKernon, inclosing the receipt, together with a medical health certificate, and instructed him not to receive the renewal premium unless accompanied

by a duly certified health certificate. Mr. Duncan's health was at this time such as that he was unable to obtain a proper health certificate. Both Duncan and Talbot were notified of this instruction, and that no payment would be received unless accompanied by a health certificate. In consequence of this, no further tender was made. It was also in evidence that W. D. Talbot was a man of large means. There was a jury, and verdict for the plaintiff.

J. M. Dickinson and John A. Pitts, for plaintiff in error.

Baxter Smith, for defendant in error Mrs. Duncan.

John J. Vertrees, for defendant in error W. D. Talbot.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

Most of the errors assigned are based upon an erroneous interpretation of the charge, and of the issues submitted to the jury. The learned trial judge did not assume that Pryor had any authority to either collect the renewal premium due October 8, 1898, or to extend the time within which it might be paid. Upon all these matters the charge was quite as favorable to the defense as they could claim, for he refused to submit the plaintiffs' case to the jury upon any issue as to Pryor's right to either collect the renewal premium on the Duncan policy, or to extend the time of payment until Monday. Rightly interpreted, and considered as a whole, the original charge submitted the case to the jury upon the single issue as to whether, on all the facts and circumstances, the payment of the renewal premium had been prevented by the withdrawal of the company's official receipt from Nashville before the time had elapsed within which it might have been paid. But if there was any ambiguity in respect to the issue submitted to the jury, it was fully cleared up by the subsequent charge to the jury, who, after being charged, returned into court and propounded this inquiry:

"The jury wants to know whether or not there was more than one point to be considered. If but one, was that as to whether or not payment failed on account of absence of receipt?"

Whereupon the court further instructed the jury as follows:

"Now, gentlemen, in answer to your question, I can only repeat the substance of what I have already said to you,—that the case is submitted to you on the single question of whether or not payment of the renewal premium due October 8, 1898, was defeated or prevented by reason of the fact that the receipt for the premium had been returned to Cincinnati, or was not then in the city. If, substantially as stated by Mr. Talbot, he desired to pay, and was ready and willing to pay, and called for the receipt, and the local agent, Mr. Pryor, went to the bank to procure the receipt and ascertained that it was not in the city, and so reported to Mr. Talbot, and thereupon agreed to telegraph for the receipt, and Mr. Talbot, bona fide, desiring then to pay the premium, and acting bona fide on the belief that the receipt would be returned, and that he could and would pay the premium Monday, then, under such circumstances as these, the company would not be permitted to rely on the failure to pay the premium on the last day when due, for the purpose of forfeiting the policy; and in that view, if you are satisfied of that by the weight of the evidence,—the burden being on the plaintiff to show this,—then your verdict should be in favor of the plaintiff.

If, on the contrary, substantially as stated by the agent, Mr. Pryor, he went to Mr. Talbot's office on one or more occasions and urged him to pay the premium, and Mr. Talbot delayed until late in the afternoon, and at the last interview Mr. Pryor told him that he supposed that the receipt was then probably gone, as the banks had closed, and thereupon agreed, at the suggestion of Mr. Talbot, to telegraph for the receipt, and that was all that occurred, that would not save the policy. On the contrary, the failure to pay would have worked forfeiture, and, in that view, your verdict should be for the defendant. This is what I have heretofore said to you."

The case is in narrow compass. Mr. Duncan was notified that the society's official renewal receipt had been sent to the American National Bank, at Nashville, and that he might pay his renewal premium to that bank in exchange for the official renewal receipt at any time before the expiration of the last day of grace, October 8, 1898. Mr. Duncan, in consequence of this notice, had a right to rely upon finding his receipt in the American National Bank until otherwise notified. The conceded fact is that this receipt was returned to the company's general agents at Cincinnati prior to Saturday, October 8th. Why this was done, and just when it was done, is unanswered by the evidence. The facts were within the knowledge and control of the society, but, for its own reasons, it has not chosen to explain its conduct in this matter. But if Mr. Duncan was not prevented from paying his renewal premium by the withdrawal of the receipt from Nashville, the beneficiaries under the policy on his life have no right to complain. It would be a matter of no consequence whether the receipt was in Nashville or Cincinnati on the last pay day, provided the insured had no purpose to pay the renewal, or was in no way prevented from paying the premium by the return of the receipt to Cincinnati. Now, this is just the issue upon which the case was submitted to the jury. There was a sharp conflict in the evidence bearing upon this question. The evidence of Talbot we have heretofore stated. That of Pryor, for the society, was a substantial denial of every fact which had been testified to by Talbot from which it might have been inferred that Talbot, in good faith, proposed to pay Duncan's premium on the due day, and was only prevented from so doing by the fact that the receipt had been returned to Cincinnati prior thereto without notice to Duncan or himself. Talbot was in all substantial matters corroborated by a disinterested witness present in his office, who heard the conversation between Talbot and Pryor detailed by Pryor.

For the plaintiff in error it has been urged that an offer to pay Pryor was of no consequence, because he had no authority to collect, and that the only way in which a forfeiture of the policy could be avoided was to have made a tender to the American National Bank. But if the fact that Pryor had no authority to collect Duncan's renewal premium made the offer to pay him ineffectual in avoiding a forfeiture for nonpayment, it is difficult to see on what better ground an offer to pay the American National Bank would have stood. The authority of the bank depended upon its possession of the society's official receipt. Duncan, under the express provision of the policy, could pay his renewal premium only "to an authorized agent of the society," "but only in exchange for a receipt signed by the president or secretary, and countersigned by such agent." The bank had, after the return of

the original receipt, no more authority to collect or receive Duncan's renewal premium than Pryor. To have made a tender to the bank would have been an idle ceremony, except in so far as such an offer to pay would tend to show that the unlawful withdrawal of the receipt before the close of the day had prevented the payment on the due day. But that was just as fully evidenced by the offer to pay Pryor for the company. Neither the bank nor Pryor had authority to receive the payment, and in the absence of such authority an offer to pay one would be no more efficient in avoiding a forfeiture than the other. If there was any advantage in a tender to one over the other, it would seem to be in favor of the tender to Pryor, rather than the bank. The authority of the bank as an agent for any purpose had been withdrawn by the recall of the official receipt. Pryor's agency, though limited, was unaffected by that fact; and he was, when the tender was made to him, an agent having authority to "look after" collection of renewal premiums, but without power to receive such premiums in the absence of the society's official receipt. It is not clear that Pryor's promise to send for the official receipt, and to present it again for payment on Monday, has any further or other significance than as evidence tending to show a good-faith purpose by Talbot to pay the premium on the due day, frustrated by the assured's inability to find any agent of the company authorized to receive such payment in exchange for the society's official receipt. Certainly the plaintiff in error cannot complain if the charge be so construed as to require the plaintiff below to show that Pryor did agree to procure the return of the receipt, with authority to receive payment of the premium upon its return.

Conceding Pryor's want of general authority to collect renewal premiums, or extend time for their payment, it is not clear, under the state of circumstances existing when he undertook to secure the return of the society's receipt and power to deliver it upon payment being made, that the company should be permitted to deny his authority, if, in reliance thereon, the assured, who was otherwise wholly without fault, should be misled and induced to rely upon that arrangement, rather than resort to some other equally uncertain scheme to avoid a forfeiture which was about to ensue through no fault of his.

Upon the facts of the case, it is enough, however, to say that there was abundant evidence from which the jury might find that the payment of Duncan's renewal premium was only prevented by the withdrawal of the society's official receipt from the American National Bank, and its return to Cincinnati. Under the terms of the policy, and of the notice given him, he had a right to rely upon the retention of the receipt by the bank until the close of the last due day, and a right to believe that he could pay his renewal premium at that bank, and receive the company's official receipt, at any time during the last day of grace. If, by reliance upon the society's agreement, as evidenced by its notice, he postponed payment until too late to pay elsewhere or otherwise, the society should not be permitted to rely upon a forfeiture brought about through its own mismanagement and breach of duty because a technically good tender was not made as between the bank and Pryor, provided it was clearly made to appear that, but for the situation brought about by the unauthorized with-

drawal of the company's official receipt, the renewal premium would have been paid ad diem. The society, under such a state of facts, was bound to have received payment when in a position to furnish the assured with its official receipt. This plain moral and legal obligation it repudiated by notifying the insured that payment would be accepted only when accompanied by a health certificate. This was impossible, and the evidence tends to show that the Cincinnati general agents of the company, who imposed the condition and withdrew the receipt from Nashville, knew of Duncan's state of health before there was any default in payment of premiums. In claiming a forfeiture, and according to the assured only the right to restore a forfeited contract upon terms imposed by itself, and impossible of compliance, the society is endeavoring to avail itself of a forfeiture brought about by its own fault. This it cannot do. It is estopped to claim that the tender made to Pryor was insufficient, or that any forfeiture has resulted from the failure to pay or offer to pay an authorized agent on the due day. The case is, in its essential principles, governed by the rule of estoppel applied in Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841.

There was no error in instructions given or refused, and the judgment is accordingly affirmed.