BACHMAN *v.* KENTUCKY HOME LIFE INSURANCE CO.

[No. 16,184. Filed May 3, 1939.]

*Hays, Bulleit & Orbison,* for appellant.

*John H. Weathers, Sherman Minton, Roger H. Phillips* and *L. H. Hilton,* for appellee.

LAYMON, J.—Appellee sought by this action to cancel two life insurance policies which its predecessor had issued on the life of one Severin Bachman and to perpetually enjoin appellant, as beneficiary under the two policies, from filing any suit for recovery thereon.

The amended complaint was in four paragraphs and proceeded upon the theory (1) that both policies lapsed for non-payment of premium and were never reinstated

in accordance with the provision for reinstatement contained in each policy, and (2) that insured gave false answers as to the condition of his health in both applications for reinstatement. Appellant filed an answer in general denial and also two paragraphs of special answer, to which the appellee replied in general denial. The cause was tried by the court without a jury, and the court made a special finding of facts, stated its conclusions of law thereon, and entered judgment for appellee. Appellant has appealed, assigning as error for reversal the overruling of the motion for a new trial and error in each of the conclusions of law.

On March 17, 1927, the Inter-Southern Life Insurance Company issued a policy of life insurance in the amount of $12,000, if paid in instalments, and in the amount of $10,200, if paid in a lump sum, by the terms of which it insured the life of Severin Bachman, appellant's decedent, in consideration of the payment of an annual premium in the amount of $585.80, and a like sum to be paid on the 17th day of March of each and every year thereafter during the continuation of the policy. On December 5, 1930, the same insurance company issued another policy in the amount of $2,000, by the terms of which it insured the life of said Bachman in consideration of the payment of an annual premium in the amount of $105.12, and a like sum to be paid on the 5th day of December of each and every year thereafter for the term of 17 years from the date of the policy, or until the death of the insured. The annual premiums on the $12,000 policy which became due on March 17, 1928, 1929, 1930, and 1931, were paid. About April 16, 1931, the insured obtained a loan on said policy in the amount of $948, which was evidenced by an agreement executed by the insured on even date therewith. On March 17, 1932, there became due on said loan agreement annual interest in the amount of $56.88, to the next anniver-

sary date of the policy, and on the same date there also became due on said policy the annual premium thereon in the amount of $585.80. Within the period of grace allowed for the payment of premiums, as provided by the terms of the policy, the insured tendered his extension note for $500, payable July 17, 1932, together with his check for $142.68. The check was dishonored by the bank upon which it was drawn, and the insurer notified the insured by letter on June 6, 1932, that his policy had lapsed because of the non-payment of the check and that it would be necessary for him to execute and return to' the company for approval an application for reinstatement, together with a remittance of $142.68. On June 17, 1932, the insured executed an application for reinstatement and forwarded it to the insurance company, which was then in the hands of a receiver, and at the same time forwarded and tendered his check for $142.68. Upon receipt of this application for reinstatement, the check for $142.68, and the original extension note of $500, the insured's application for reinstatement was approved on June 30, 1932, and a certificate of reinstatement was sent to him. The check for $142.68 was dishonored, and thereafter on August 1, 1932, the insured sent the company a check in the amount of $209.34, which represented the dishonored check in the amount of $142.68 and the further payment of $35, which the company had requested, and the additional sum of $31.66, which represented the amount then due on a note given in connection with the $2,000 policy. This check was likewise dishonored, and the policy again lapsed. The insurance company advised the insured on August 25, 1932, that his application for reinstatement would be required. About September 2, 1932, Bachman tendered a check for $177.68, to cover the previous $142.68 check and the $35 item due on the $12,000 policy. On October 6, 1932, the insured made application in writing to appellee for

reinstatement of the policy and forwarded to appellee said application, which was received by the insurance company on October 7; and, upon receipt of this application for reinstatement, the insurance company informed the insured that he could make settlement in money and a new note, should he be unable to pay in cash. The insured, on or about October 25, 1932, forwarded and tendered as the amount necessary for the reinstatement of his policy his premium note in the amount of $400, dated September 17, 1932, and payable on or before two months after date, and at the same time forwarded and tendered to the company a check in the amount of $111.73. The company cashed the check for $177.68 tendered by the insured about September 2, 1932, and, at the time of the death of Bachman, had in their possession $177.68 in cash, in addition to the insured's note for $400 and his check for $111.73. The amount of said checks and said note was the amount of the premiums then and there past due on the two policies and the amount of interest then and there past due on the insured's policy loan. The note is as follows:

"$400.00                    September 17, 1932.
"On or before two months, after date I promise to pay to KENTUCKY HOME LIFE INSURANCE COMPANY, at its Home Office in Louisville, Kentucky, FOUR HUNDRED & 00/100 DOLLARS with interest at the rate of six per cent, per annum.

"This note is accepted by said Company at the request of the maker, on the following express terms and conditions, together with TWO HUNDRED, FORTY-TWO & 68/100 DOLLARS in cash.

"1. That although no part of the premium due on the 17 day of March, 1932, under Policy No. 144872 issued or assumed by the Kentucky Home Life Insurance Company on the life of Severin Bachman has been paid the insurance thereunder shall be continued in force until midnight of the due date of this note.

"2. That if this note, with interest, is paid on or before the date it becomes due, or within ten days

thereafter, such payment together with said cash, will then be accepted by the Company as payment of said premium and all rights under said policy shall thereupon be the same as if said premium had been paid when due.

"3. That if this note is not paid on or before the date it becomes due, it shall thereupon automatically cease to be a claim against the maker and the Company shall retain said cash and all payments made hereon as part compensation for the privileges granted herein and for keeping said insurance in force to the due date of this note; and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made.

"4. That the Company has duly given every notice required by law in respect to said premium, and in further consideration of the rights and privileges granted herein the maker hereof does hereby waive every other notice in respect to said premium or this note, it being well understood by the maker hereof that the Company would not have accepted this agreement if notice of any kind were required as a condition to the full enforcement of its terms.
"(Name) SEVERIN BACHMAN.

"[On the back of the note appears the following indorsement:]

"Received / Oct. 25, 1932 Inter-Southern Life Insurance Co."

After receiving the check for $111.73 and the $400 premium note on October 25, the insurance company proceeded toward an investigation to determine whether the insured's application should be approved, and, while the investigation was pending, said Bachman died. The investigation was not completed, and the application was not approved.

The $12,000 policy of insurance, under the heading "Reinstatement," provided as follows:

"Unless the cash value has been paid, this policy, upon evidence of insurability satisfactory to the Company, may be reinstated at any time upon written application by the Insured, and upon payment to the Company of all arrears of premiums and interest thereon at six per centum per annum to date

of reinstatement, and any loan that existed at date of default shall either be repaid in cash or continued as an indebtedness in accordance with the loan provisions of the policy. No reinstatement shall become effective until the application therefor has been received and approved by the Company, and the official certificate of reinstatement manually delivered to the Insured."

The insured, in the application for reinstatement, stated that he had not been ill since the date of the original policy; that he had not consulted a physician since said date; and that he was, at the time of the application, in sound health. The application also contained the following provision:

"I AGREE that said policy shall not be considered reinstated by reason of any cash paid or settlement made in connection with this application unless and until this application shall be approved for reinstatement by the proper officers of the Company; and until a settlement satisfactory to the Company is made of all past due premiums or other indebtedness under the policy as now claimed by the Company. It is also agreed that if notice of the approval of this application is not mailed to me by the Company within thirty days from this date said application is to be considered declined, and any payment made herewith is to be promptly returned to me upon demand."

Appellee, by contract, pursuant to a judgment of a Kentucky court, became obligated for all of the insurance theretofore issued by the said Inter-Southern Life Insurance Company, including the policies involved here.

From these facts the trial court made its special finding, upon which it concluded that at the time of the death of the insured the policies of insurance had lapsed and were not of any force or effect and were without any value whatsoever.

The appellant, in her brief, has expressly waived any alleged error with reference to the $2,000 policy. Hence we will direct our attention only to the $12,000 policy.

Appellant contends that the delivery to appellee by the insured of his premium note in the sum of $400, with the provisions therein contained and bearing date of September 17, 1932, payable two months after date, together with the amount of $242.68, being the cash item required by the terms of the note, and the acceptance thereof by appellee, was sufficient to keep the insurance under the $12,000 policy (the policy designated by number in the note) in force until the insured's death, which occurred on October 29, 1932, notwithstanding the fact that the insurance under such policy had previously lapsed for non-payment of premium due on March 17, 1932, and notwithstanding the fact that the insured's application for reinstatement had not been approved; that the acceptance by appellee of the note and the cash tendered in connection therewith bound the appellee unconditionally to keep the insurance in force for a period of two months from September 17, 1932, and constituted a waiver of the provisions of the policy relative to reinstatement and a waiver of the provisions in the application for reinstatement.

To the contrary appellee contends that under the facts as found by the court and as disclosed by the evidence, the policy was never reinstated or revived because the appellee company did not finally approve the application for reinstatement and did not deliver its certificate of reinstatement to the insured; that appellee, by accepting the note, together with the checks, did not unconditionally promise to keep the insurance in force for a period of two months from September 17, 1932, and did not waive the provisions of the policy relative to reinstatement, nor did it waive the provisions contained in the application for reinstatement.

There is no dispute in the fact that the premium due on the $12,000 policy on March 17, 1932, was not paid at the time, nor was it paid within the period of grace

allowed, and, in accordance with the provisions of the policy, the insurance thereunder lapsed on April 17, 1932, subject to the right of the insured to have the policy continued in force by reinstatement, as by its terms provided.

Appellant seeks to impose liability under policy No. 144872 upon the theory that the negotiations between the appellee and the insured subsequent to August 25, 1932, resulted in a revival of the insurance, so that it was in force at the time of the insured's death.

It appears that the premium note was prepared by appellee and mailed to the insured with instructions concerning the reinstatement of his policies. The provisions in this note are plain, definite, and certain. We think the meaning is clear and the intent apparent, and we need not apply rules of construction. The note, by its terms, expressly provided that the note was accepted by the insurer, together with $242.68, upon the condition that the insurance thereunder (policy No. 144872) would continue in force until midnight of the due date of the note (November 16, 1932) ; that if the note was not paid on or before the date it became due, the company was to retain said cash and all payments made thereon as part compensation for the *privileges granted therein and for keeping said insurance in force to the due date of the note.*

In order to comply with the provisions contained in the note, the insured was only to execute this instrument and deliver it, together with $242.68 in cash, to appellee. But, in order to effect a reinstatement of his policy in accordance with its terms, the insured, in addition to the execution and delivery of the note and the payment of the cash, was to furnish satisfactory evidence of his insurability and was to obtain an approval of his application and a certificate of reinstatement.

It is quite true that by the terms of the note appellee

did not agree to approve the application of the insured for the reinstatement of his policy, but it did expressly agree that the insurance under policy No. 144872 was to be in force until midnight of the due date of the note; in consideration of which, in the event the note was not paid, the company was to retain the cash and all payments made thereon as part compensation for the privileges granted therein and for keeping the insurance in force to the due date of the note. Our attention has not been called to any statute in force prohibiting appellee, under the circumstances, from making such an agreement, and our search fails to disclose any such statute.

Appellee urges, as a ground for avoiding the consequences of the provisions of this note, that the company did not accept the note.

It appears that the note and the two checks representing the cash items due were forwarded to appellee by the insured in the course of his negotiations to effect his insurance. These were received by appellee, who cashed the check in the amount of $177.68, depositing the money therefrom to its account, and placed the check in the amount of $111.73 in its files. The record is silent as to the reason, if any, which appellee had for not cashing the check tendered in the amount of $111.73. However, the record also fails to disclose any act on the part of the insured to prevent appellee from cashing this check and realizing the cash therefrom. There is no dispute in the fact that this note and the two checks were received by appellee and that the check in the sum of $177.68 was cashed and deposited by appellee prior to the death of the insured. Manifestly such conduct on the part of appellee is wholly inconsistent with the contention that it did not accept the note.

It is insisted by appellee that the note was received in connection with a written application by the insured

for a reinstatement of his policy and that it held the note while it made an investigation of the representations and warranties made by the applicant in his application, and that before actual approval of the application by appellee, the holding of the note would not create any liability upon appellee, nor would such holding constitute a waiver of the conditions of the reinstatement agreement.

It cannot be successfully contended, under the facts as they appear, that there was such a lapse of time in acting upon the application for reinstatement as would give rise either to an assent, on the part of appellee, to a reinstatement of the policy or a waiver of the conditions in the application and policy. The application was received by the company on October 6, 1932, but the premium note and the check for $111.73 (the check for $177.68 had been tendered on or about September 2, 1932) did not reach appellee until October 25, 1932, and the insured died on October 29, 1932.

Under the facts, as they appear, the premium note, the application for reinstatement, and the policy must be considered as one transaction and construed accordingly, and, in so doing, we must be governed by the familiar rule that the courts will consider the relation and situation of the parties when the contract was made, and, from such considerations, ascertain the meaning which may reasonably be said to have been in the minds of the contracting parties.

The policy in question, by its terms, provides for a lapse of insurance on account of default in the payment of premiums, and not for a forfeiture. The policy recognizes that the insured has the right to insurance during the period therein provided for, on the performance by him of the conditions therein contained. The insured, under such conditions, is not in the same position as he was when applying for the insurance in the first instance.

In applying in the first instance, there is no insurance in force until put in effect at the pleasure of the company, while in a case where the insurance has been in force, and, for a violation of a condition in the policy the insurance lapses, but the policy provides that the insurance, under certain conditions, may be reinstated, the insured, in attempting to have his insurance revived, is but exercising a right afforded him under and by virtue of the terms of the contract. Under the provisions of the policy before us, the right to its benefits may be suspended for non-payment of premium, but the insured's right to have it reinstated, under certain conditions, continues.

In construing the premium note, application, and policy as one transaction, it is fair and reasonable to assume that the parties evidently had in mind: (1) That the insurance, as provided by policy No. 144872, was to become effective upon the execution and delivery by the insured to appellee of the note, accompanied by the payment of $242.68, and was to remain in force until the due date of the note; and (2) to effect a reinstatement of the policy pursuant to the insured's application for reinstatement and his evidence of insurability, which application, if approved, would obviously have carried the policy in effect beyond the due date of the note. If this was the intention of the parties, then there clearly appears to be no conflict in the terms of the various instruments. Furthermore, it appears that in the course of their negotiations, in an effort to have the policy reinstated, appellee furnished the insured with the note, prepared by it, containing the provision that the note and the cash payment would be accepted upon the express condition that the insurance under policy No. 144872 would continue in force until the due date of the note. It must be presumed that the insured relied, at least to some extent, upon the provisions in the note.

In the case of *Insurance Co. v. Eggleston* (1877), 96

U. S. 572, 577, 24 L. Ed. 841, the Supreme Court of the United States said:

> "Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

See also, *Workingmen's etc., Assn.* v. *Leverton* (1912), 178 Ind. 151, 98 N. E. 871; *Majestic Life, etc., Co.* v. *Tuttle* (1915), 58 Ind. App. 98, 107 N. E. 22.

Applying the above doctrine to the facts in the case at bar, the insurer ought to be estopped from claiming non-liability because the provisions for reinstatement contained in the policy have not been complied with, and we so hold.

It may also be said that the provision in the policy relative to reinstatement and the provision contained in the application for reinstatement to the effect that no reinstatement shall become effective until the application has been received and approved by the company is for the benefit of the company and may be waived. *Majestic Life, etc., Co.* v. *Tuttle, supra; American Income Ins. Co.* v. *Kindlesparker* (1936), 102 Ind. App. 445, 200 N. E. 432.

If appellee is correct in its contention that there was no insurance in force until the application for reinstatement had been approved by the company, then it is obvious that the provision in the note "the insurance thereunder shall be continued in force until midnight of the due date of this note" would be meaningless, especially if the application were not acted upon until after the due date of the note.

From the undisputed facts, as they appear from the record, the provisions in the premium note bearing date

of September 17, 1932, were binding upon appellee at the date of the death of the insured, and, according to the provisions therein contained, the decedent's insurance under policy No. 144872 was in force at the time of his death, notwithstanding the fact that appellee had not approved the application for reinstatement.

It is contended, as a further ground for avoiding liability under the terms of the policy in question, that the insured made false and material representations concerning the state of his health which would have influenced the action of the company upon his application. Since the failure of appellee to approve the application did not prevent the insurance, under the provisions of the premium note, from being in force, the statements of the insured in his application would not affect the provisions of the note, unless it could be shown that such statements might reasonably have affected the company's judgment in becoming bound by the provisions in the note. There is no finding by the court that the answers to the questions by the insured in his application for reinstatement might reasonably have influenced the appellee in accepting the risk or fixing its terms.

In view of the conclusions we have reached, the judgment of the trial court is reversed, with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.