ROGERS, Justice.
 

 On October 3, 1929, Max Wilson, of the city of Bogalusa, in this state, applied for membership in the Sovereign Camp, Woodmen of the World, a fraternal organization domiciled in the city of Omaha, state of Nebraska, The applicant was examined physically by the organization’s local physician, who found nothing in the condition of the applicant’s health to forbid his insurance. Accordingly, a certificate was issued by the fraternity on October 29, 1929, and delivered to and accepted by the insured on the following day, October 30, 1929. The certificate called for an insurance of $4,000, payable to Mrs. Olga Wilson, the insured’s wife, as the beneficiary.
 

 Max Wilson died on December 11, 1932. The insurer was promptly notified of his death, and the usual blanks for proof of death were furnished the beneficiary and duly executed. But the insurer declined to pay the loss, and this suit was filed by the beneficiary to recover the amount of the policy. Defendant resists plaintiff’s demand on two grounds, viz.: (1) That, at the time the application was made and the certificate delivered, the deceased warranted he was in good health, whereas he was suffering at the time from a fatal disease known as “Hodgkins Disease,” that he misrepresented the true state of his health for the purpose of defrauding the defendant and in violation of defendant’s constitution, laws and by-laws, and that by reason of the misrepresentations the insurance contract is null and void; and (2) that the insured was not in good standing at the time'of his death, because he had failed to pay his assessment for August, 1931, on or before August 31, 1931, and he thereby became suspended and the certificate became null and void on September 1,1931. We shall dispose of these defenses, in their reverse order.
 

 1. The assessment for August, 1931, was paid by the insured on September 8, 1931, and was immediately transmitted by the financial secretary of the local camp to the home office at Omaha.
 

 Section 63, paragraph (b), of the constitution and laws of the defendant association, provides th'at, if a member fails to pay his assessment before the end of the month, he shall become suspended and the contract between the parties shall thereby terminate. Section 65 provides that a member who becomes suspended for the nonpayment of any assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the association by the payment of the current installment which should have been paid to maintain him as a member. Section 111 requires the financial secretary of each local camp to remit to the home office of the association on or before the 5th day of every month all funds due the Sovereign Camp, together with a detailed statement showing the standing of the members of the local camp. And section 112 provides that, in the event the remittance from the local camp is not received by the secretary of the Sovereign Camp on or before the 15th day of that month,
 
 *375
 
 the local camp and all its members shall stand suspended.
 

 On September 5, 1931, the financial secretary of the camp at Bogalusa sent to the home office his report for the month of August, 1931. This report contained the name of the insured as one of the delinquents. But on the duplicate of this report, which was retained by the local secretary, opposite the name of Max Wilson, the insured, is noted, .“Paid 9/8 month-special.” On September 10, 1931, the local secretary forwarded to the Sovereign Oamp what he designates as a supplemental report made out on a blank form furnished by the Sovereign Oamp. On this supplemental report appears the name of Max Wilson and as paid the amount of his assessment for August, 1931.
 

 The record shows that wherever payments of assessments were made after the 5th of any month and a sufficient time allowed for the report to reach the home office before the 15th of that month, the assessments were reported as paid on the supplemental list, were checked off on the original list, and no notice of suspension was sent to the members paying them. On the other hand, the members appearing as delinquents on the original list and not appearing as paid on the supplemental list were promptly notified of their suspension by the home office. This procedure appears to be in keeping with section 112 of the constitution and laws of the defendant association, supra. Max Wilson, the insured, was never notified that he was suspended or that he was in default on any of his assessments.
 

 On the blank form furnished by the Sovereign Oamp for the supplemental report to care for the assessments paid after the regular report is sent to the home office appears in print the following significant statement, viz.: “Enclosed please find money order (or bank draft) for $-, being the amount due to be credited to the following listed below, they having complied with all the requirements of the Constitution and Laws.” In other words, the Sovereign Oamp accepted the remittance made by the secretary of the local camp on September 10, 1931, covering the assessment paid by the insured for August, 1931, in connection with his supplemental report, which report contained ■ a statement placed thereon by the Sovereign- Oamp itself, to the effect that all the members appearing thereon, including the insured, had complied with all the requirements of the constitution and laws of the association.
 

 Plaintiff takes the position, we think correctly, that the defendant association having accepted the payment of the assessment due by the insured for the month of Aixgust, 1931, under the conditions stated, and by its course of conduct having failed to indicate any intention of claiming the forfeiture of the insurance contract because of the nonpayment by the insured of the assessment for August, 1931, before the last day of that month, the defendant association is estopped from claiming such forfeiture.
 

 Forfeitures are not favored in law, and in cases of insurance, where the conduct of the company has been misleading, the ordinary principles of estoppel apply and preclude the company from setting up the forfeiture.
 

 We think this case falls within the rule announced in Gunther v. Mutual Aid Association, 40 La. Ann. 776, 5 So. 65, 2 L. R. A.
 
 *377
 
 118, 8 Am. St. Rep. 554. There the court held that the principles of equitable estoppel were binding on a mutual benefit association as well as on a natural person, and that, where such an association has pursued a course of conduct which leads the insured to honestly believe that, by conforming thereto, his rights will be protected, the association will be es-topped from claiming a forfeiture, although incurred under the letter of the contract. The court, in its opinion, quoted with approval the following language used by the Supreme Court of the United States in New York L. Insurance Company v. Eggleston, 96 U. S. 572, 577, 24 L. Ed. 841, viz.: “Forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of the insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.”
 

 2. The conclusion which we have reached on the foregoing ground of defense disposes of the ease. Since the insurance contract was in force for more than two consecutive years prior to the insured’s death, under section 81 of the constitution and laws of the defendant association it became incontestable, except for certain causes which are not relied on by defendant to defeat plaintiff’s claim. We might say, however, in justice to the deceased, our examination of the record has failed to show that deceased, either on applying for the insurance certificate or on receipt of the certificate, was guilty of any fraud or knowingly misrepresented the state of his health.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 ST. PAUL, J„ absent