## INSURANCE COMPANY v. EGGLESTON.

1. Any agreement, declaration, or course of action on the part of an insurance
company, which leads a party insured honestly to believe that by conform-
ing thereto a forfeiture of his policy will not be incurred, followed by due
conformity on his part, will estop the company from insisting upon the
forfeiture, though it might be claimed under the express letter of the con-
tract.

2. A policy of insurance, issued by a New York company upon the life of A., who
resided at Columbus, Miss., stipulated, that if the premiums were not paid
at the appointed dates the company should not be liable, that all receipts
for them were to be signed by the president and actuary, and that agents
were not authorized to make, alter, or discharge contracts, or waive forfeit-
ures. After the policy was issued, the company discontinued its agency at

Columbus, and from time to time, as the premiums became due, notified A. by mail where and to whom to pay them. No notice as to the premium due Nov. 11, 1871, having been received by him, it was ascertained, by inquiry of the agents at Savannah, Ga., and Vicksburg, Miss., to whom payment had formerly been made, that the sub-agent at Macon, Miss., held the receipt. Payment was tendered him Dec. 30, but he refused to accept it unless a certificate of A.'s health was furnished. A. died Jan. 5. 1872. The company, when sued, set up the forfeiture of the policy by reason of the non-payment of the premium on the day it was due. *Held*, that A., in view of the company's dealings with him, had reasonable cause to expect, and rely on receiving, notice where and to whom to pay the premium, and that the company was estopped from setting up that the policy was forfeited by the non-payment, on Nov. 11, of the premium then due.

3. *Insurance Company* v. *Davis* (95 U. S. 425), and *New York Life Insurance Company* v. *Statham et al.* (93 id. 24), commented on and distinguished from this case.

Error to the District Court of the United States for the Northern District of Mississippi.

This was an action in the District Court of the United States for the Northern District of Mississippi, having the same powers as a Circuit Court, on a policy of life insurance, issued by the plaintiff in error, the defendant below, a New York corporation doing business in the city of New York, on the 11th of November, 1868, for the sum of $5,000, on the life of Edward C. Eggleston, a resident of the State of Mississippi, for the benefit of his children, Louisa and Thomas, and in consideration of an annual premium of $306, payable after the first premium semi-annually, one-half on the 11th of November, and one-half on the 11th of May, in each year. The policy contained the usual condition that if the premiums were not paid on or before the respective days named, together with any interest that might be due thereon, the company should not be liable. The following clause was added: "All receipts for premiums are to be signed by the president or actuary. Agents for the company are not authorized to make, alter, or discharge contracts, or waive forfeitures." Eggleston died on the 5th of January, 1872.

The defence set up on the trial was that the policy was forfeited by the failure of the assured to pay the last instalment of premium, which fell due on the 11th of November, 1871. The cause was tried by a jury, who found for the plaintiffs; and the only question raised by the bill of exceptions and

brought here for review, is, whether the judge properly left to the jury the question of fact which was made by the plaintiffs below in answer to the alleged forfeiture. The case presented on the trial, as shown by the bill of exceptions, is as follows : —

The plaintiffs proved that the policy of insurance mentioned in the declaration was delivered, and the first premium received thereon, by one Stephens, a local agent of the defendant, in Columbus, Miss., and that said Eggleston, upon whose life said policy was issued, then and up to his death resided in the immediate vicinity; that soon after the issue of said policy the agency of said Stephens was revoked, and no other agent appointed at that place; that said Eggleston was notified by defendant to pay the next premium falling due to Johnston & Co., its agent at Savannah, Ga., and that he was also notified to pay the subsequent premiums to B. G. Humphreys & Co., the defendant's agents at Vicksburg, Miss., except the one falling due Nov. 11, 1871, all the other premiums falling due before the death of said Eggleston having been paid. It was also testified by the sons of said Eggleston, and by Goodwin, the cashier of the bank through which the other payments had been made, that if any notice was given by the defendant to said Eggleston, to whom and where the said premium due the eleventh day of November, 1871, should be made, that they did not know it; and that said Goodwin had the money to pay the said premium, which would have been paid had the notice been given; and after said premium became due and payable, said Goodwin, for said Eggleston, telegraphed to Johnston & Co., at Savannah, Ga., inquiring to whom payment should be made; who replied, to telegraph to B. G. Humphreys & Co., at Vicksburg; that B. G. Humphreys & Co. replied, to make payment to Baskerville & Yates, sub-agents at Macon, Miss., who held the payment receipt. On Dec. 30, 1871, a friend of said Eggleston tendered payment of the premium to Baskerville & Yates, which was refused unless a certificate of health was furnished; said Eggleston was then sick, and died on the 5th of January, 1872. One Williams, a clerk of Baskerville & Yates in their insurance business, and a witness for the defendant, testified that on the 1st of November, 1871, he mailed a

notice, post-paid, to said Eggleston, addressed to him at Columbus, Miss., to make payment to Baskerville & Yates, agents at Macon, Miss., and that they held the proper premium receipt. Macon, Miss., it was found, is thirty miles from Columbus by railroad.

Upon this evidence the judge charged the jury as follows. " The non-payment of the premium is admitted; and, if nothing more appears from the evidence, the plaintiffs will not be entitled to recover. To avoid the defence, it is insisted by the plaintiffs that the non-payment was caused by the defendants not having given to the said Eggleston notice of the place where payment was required, and, therefore, the fault of the company, and not that of Eggleston or the plaintiffs. The *onus* of proving the cause for non-payment is on the plaintiffs. [If you shall believe from the evidence that the payments of the premiums had, before that time, been made to such agents as the company had designated from time to time, and of which and to where said Eggleston was given notice by the defendant, and that no such notice was given to said Eggleston before the time the non-paid premium fell due, and that as soon as he did thereafter receive such notice he did tender to the designated agent the premium due, and that such failure to pay was caused by the want of such notice, then the policy was not forfeited, and the plaintiffs will be entitled to recover the amount of the policy, with six per cent interest, from sixty days after the company was notified of the death of Eggleston, less the amount of any unpaid premiums, with like interest, up to the death of said Eggleston.] If you shall believe from the evidence that the notices before given were by letter through the mail, and that the agent of the company authorized to receive payments of the premium mailed to said Eggleston, at his post-office, such notice within such time as, by due course of mail, he would have received it, and within a reasonable time for Eggleston to make payment, then Eggleston will be held to have received such notice, and the plaintiffs will not be entitled to recover. The *onus* or burden of proof of such notice having been given is on the defendant." The defendant excepted to so much of said charge as is included in brackets.

*Mr. Matt. H. Carpenter* for the plaintiff in error.

The plaintiff in error was under no obligation to keep a local agent in the vicinity of the residence of the assured, and give him notice thereof. The premiums on his policy were payable at the domicile of the company. *Insurance Company* v. *Davis*, 95 U. S. 425.

If the defendants in error sought to excuse the payment when due, on the ground that it was the custom or usage of the company to notify the holders of policies where and to whom to pay, they should have proved on the trial that such was known to be the general usage and custom of the company, or a particular usage of universal notoriety at the place where the insurance was effected. *Adams* v. *Otterback*, 15 How. 539.

The case does not show that the assured intended to pay the premium falling due Nov. 11, 1871, or that he made any effort, prior to its maturity, to ascertain to what agent he should make payment. On the contrary, the presumption is, that, after his death became imminent, his friends took the matter in hand, and attempted to revive the policy for the benefit of his children. The agent was, therefore, independently of the express words of the policy, justified, both in law and in fair dealing, in refusing to waive the forfeiture.

The fact that the agents of the company had notified the assured to whom to make payment of particular premiums which became due prior to Nov. 11, 1871, was not such an act on the part of the company as amounted to a permission to him not to make payment until notified.

The agent could not waive payment until notice was given by him to whom and where to pay it. On the contrary, the policy expressly prohibited him from so doing.

This provision cannot be set aside upon any act of the agent and the assured. It is as much a part of the contract as any other. *Chase* v. *Hamilton Insurance Co.*, 20 N. Y. 52; *Buffum* v. *Fayette Mutual Insurance Co.*, 3 Allen (Mass.), 360; *New York Life Insurance Co.* v. *Statham et al.*, 93 U. S. 31.

*Mr. Philip Phillips, contra.*

There was no error in the charge of the court below. The obligation to give the assured notice where and when to pay

premiums, can arise from the actions of the company, as well as from express words.

The principle that no one shall be permitted to deny that he intended the natural consequences of his acts, when he has induced others to rely on them, is as applicable to an insurance company as to an individual.

The doctrine of waiver, as asserted against such a company, to prevent the strict enforcement of conditions contained in its policy, is only another form for the doctrine of estoppel. *Insurance Company* v. *Wolff*, 95 U. S. 326.

That the assured acted in good faith, and was ready and anxious to continue the policy, is abundantly established by the evidence. He had the strongest inducement to do this, from the precarious condition of his health. His anxiety is shown by his prompt and repeated efforts to ascertain the agent to whom the payment was to be made.

The policy does not stipulate where the premiums were to be paid. The law of Mississippi, made for the convenience and security of its citizens, requires insurance companies to have agents in the State, and defines their duties and responsibilities. Rev. Code, 1857, p. 303, sects. 57–59.

MR. JUSTICE BRADLEY, after stating the case, delivered the opinion of the court.

We have recently, in the case of *Insurance Company* v. *Norton* (*supra*, p. 234), shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture. The representations, declarations, or acts of an agent, contrary to the terms of the policy, of course will not be sufficient, unless sanctioned by the company itself.

*Insurance Company* v. *Mowry, supra,* p. 544. But where the latter has, by its course of action, ratified such declarations, representations, or acts, the case is very different.

In the present case, it appeared that the company had discontinued its agency at the place of residence of the insured soon after the policy was issued; and had given him notice by mail, from time to time, as the premium instalments became due, where and to whom to pay them, — sometimes at Savannah, several hundred miles, and sometimes at Vicksburg, a hundred and fifty miles, from his residence. Such notice, it would seem, had never been omitted prior to the maturity of the last instalment. The effect of the judge's charge was, that if this was the fact, and if no such notice had been given on that occasion, and the failure to pay the premium was solely due to the want of such notice, it being ready, and being tendered as soon as notice was given, no forfeiture was incurred. We think the charge was correct, under the circumstances of this case. The insured had good reason to expect and to rely on receiving notice to whom and where he should pay that instalment. It had always been given before; the office of the company was a thousand miles away; and they had always directed him to pay to an agent, but to different agents at different times.

Although, as we held in the case of *Insurance Company* v. *Davis* (95 U. S. 425), the legal effect of a policy, when nothing appears to the contrary, may be that the premium is payable at the domicile of the company; yet it cannot be expected or understood by the parties that the policy is, in ordinary circumstances, to be forfeited for a failure to tender the premium at such domicile, when the insured resides in a distant State, and has been in the habit, under the company's own direction, to pay to an agent there, and has received no notice that the contrary will be required of him. He would have a just right to say that he had been misled.

Let us look at the matter as it stands. The business of life insurance is in the hands of a few large companies, who are generally located in our large commercial cities. Take a company located, like the plaintiff in error, in New York, for example. It solicits business in every State of the Union,

where it is represented by its agents, who issue policies and receive premiums. Could such a company get one risk where it now gets ten, if it was expected or understood that it was not to have local agents accessible to the parties insured, to whom premiums could be paid, instead of having to pay them at the home office in New York? The universal practice is otherwise. Local agents are employed. The business could not be conducted on its present basis without them. Now, suppose the local agent is removed, or ceases to act, without the knowledge of the policy-holders, and their premiums become due, and they go to the local office to pay them, and find no agent to receive them; are these policies to be forfeited? Would the plaintiffs in error, or any other company of good standing, have the courage to say so? We think not. And why not? Simply because the policy-holders would have the right to rely on the general understanding produced by the previous course of business pursued by the company itself, that payment could be made to a local agent, and that the company would have such an agent at hand, or reasonably accessible. We do not say that this course of business would alter the written contract, or would amount to a new contract relieving the parties from their obligation to pay the premium to the company, if they can find no agent to pay to. That obligation remains. But we are dealing with the question of forfeiture for not paying at the very day; and, in reference to that question, it is a good argument in the mouths of the insured to say, "Your course of business led us to believe that we might pay our premiums at home, and estops you from exacting the penalty of forfeiture without giving us reasonable notice to pay elsewhere." The course of business would not prevent the company, if it saw fit, from discontinuing all its agencies, and requiring the payment of premiums at its counter in New York. But, without giving reasonable notice of such a change, it could not insist upon a forfeiture of the policies for want of prompt payment caused by their failure to give such notice. In the case of *Insurance Company* v. *Davis*, cited above, the agent's powers were discontinued by the occurrence of the war, of which all persons had notice; and the law of non-intercourse between belligerents prevented any payment at all; and the

policy became forfeited and ended without any fault attributable to either of the parties. That case, therefore, was entirely different from the present; and it was in consequence of such forfeiture in the absence of fault that we held, in the case of *New York Life Insurance Co.* v. *Statham et al.* (93 U. S. 24), that the insured was entitled to recover the equitable value of his policy.

In the present case, it seems to us that the charge of the judge was in substantial conformity to the principles we have laid down. The insured, residing in the State of Mississippi, had always dealt with agents of the company, located either in his own State or within some accessible distance. He had originally taken his policy from, and had paid his first premium to, such an agent; and the company had always, until the last premium became due, given him notice what agent to pay to. This was necessary, because there was no permanent agent in his vicinity. The judge rightly held, that, under these circumstances, he had reasonable cause to rely on having such notice. The company itself did not expect him to pay at the home office: it had sent a receipt to an agent located within thirty miles of his residence; but he had no knowledge of this fact, — at least, such was the finding of the jury from the evidence.

We think there was no error in the charge, and the judgment of the Circuit Court must be

*Affirmed.*