BUSH v. LIBERTY INDUSTRIAL LIFE INS. CO., INC.

(November 17, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)

Lemle, Moreno & Lemle, of New Orleans, attorneys for plaintiff, appellant.

F. B. Smith, of New Orleans, attorney for defendant, appellee.

JANVIER, J. Barbara Bush, wife of George Hudson, was named beneficiary in a policy of life insurance issued by defendant, Liberty Industrial Life Insurance Company, Inc., on the life of Lillie Bush, sister of the beneficiary.

The insured died suddenly at about 12:30 or 1 o'clock in the afternoon of Tuesday, February 28, 1928. On the morning of February 28, 1928, the premiums due on the policy at the rate of 25 cents per week had been in arrears for a period approximating sixteen weeks. These premiums were paid to the agent and collector of the company by the beneficiary either on that day, prior to the death, or on the next day, subsequent to the death, one of the contentions of defendant being that they were paid subsequently, and, of course, plaintiff contending that they were paid prior thereto.

It was stipulated in the policy that failure to pay premiums for four consecutive weeks should effect the lapse thereof and that payment thereafter of the premiums in arrears should not be considered as reinstating the policy, unless, on the policy itself, the company should place a stamp agreeing to the reinstatement. The payment of the premium, whether on the 28th, prior to the death, or on the 29th, subsequent thereto, was the result of the solicitation by the agent of the company and was made by the beneficiary, who handed to the agent $5 in cash.

The agent and collector, shortly thereafter, hearing of the death of the insured, attempted to return the said money to the beneficiary, but she refused to accept it,

and it was later turned over to defendant company.

As justifying its refusal to pay, to the beneficiary the face of the policy, to-wit, $230, defendant presents two contentions, one raising a question of fact, i. e., that the insured was already dead at the time of the payment to the agent of the overdue premiums, and the other containing a legal proposition, viz: that, in view of the policy stipulation that after a lapse thereof no reinstatement could be effected by the mere receipt by the agent of the overdue premiums, the payment thereof did not reinstate the obligation under the policy, which, having terminated as a result of the lapse, was not, by the payment, brought back into existence.

We will first consider the disputed question of fact. It appears that, as a fairly regular custom, the collector was in the habit of calling for weekly premiums on Tuesdays and that the premiums on this policy were usually paid not by the insured, but by the beneficiary. It is very true that in the receipt book the collector entered the payment as having been received by him on February 29th, and that February 29th was a Wednesday, and that, if that entry is correct, the payment was received after the death of the insured. But in view of the uncertainties appearing in the evidence given by the collector, and bearing in mind the positive statements of the beneficiary that the payment was made on the 28th, which was a Tuesday, and that it was made prior to the death, and that, at the time it was made, the insured was in apparent good health, we have reached the conclusion that the evidence on this question of fact preponderates in favor of plaintiff's contention.

Plaintiff's counsel concedes that the legal contention can be decided in favor of his client only by our holding that the actions of the company on this and prior occasions, in accepting, without formal acknowledgment and without formal reinstatement of the policy, premiums more than four weeks in arrears, had established a custom under which plaintiff was justified in believing that, in case of delinquency existing four or more weeks, the formal requirement that the payment of the overdue premiums must be made directly to and accepted by the company, and that a reinstatement stamp must be placed on the policy itself, had been and would be waived.

The evidence leaves no room for doubt that on four prior occasions the premiums had not been paid over periods of at least four consecutive weeks and that in each such case, when the overdue payments were finally made, they were accepted and entered on the books of the company without any suggestion that the policy must be brought in for formal reinstatement.

We find in the testimony of the secretary of the defendant company a significant, though apparently inadvertent admission. When he was questioned with regard to the four prior occasions referred to and was asked why no protest was made in those cases, he said: "The company takes that up in settlement of death claims." This statement seems to mean that the company is perfectly willing to accept premiums overdue more than four weeks, but that in case of death the company will then look into the matter, and, if it finds that at some time in the past a default had existed for four weeks, it will refuse payment.

It appears to us that a clear waiver has resulted and that the principles announced in Insurance Company v. Eggleston, 96

U. S. 572, 577, 24 L. Ed. 841, and in Gunther et al. v. The New Orleans Cotton Exchange Mutual Aid Assn., 40 La. Ann. 776, 5 So. 65, 2 L.R.A. 118, 8 Am. St. Rep. 554, govern this feature of the case. In the Eggleston case the court said:

"We have recently, in the case of Insurance Company v. Norton (supra, 96 U. S., page 234) (24 Law. Edition 689) shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

In the Gunther case the Supreme Court of Louisiana quoted with approval the language which we have just above set forth.

It is suggested that our view that the company has, by its course of conduct, waived its right to a strict compliance with the letter of the contract itself, is contrary to the doctrine announced by us in Embert v. Sovereign Camp, W. O. W., 2 La. App. 140, and by our Supreme Court in Taylor v. Latin-American Life & Casualty Ins. Co., 152 La. 740, 94 So. 375. We do not think so. It is true that the facts of the Embert case rather closely resemble those which we find here, but there is a fundamental difference in that there, though the overdue premium was received by the agent after the policy had lapsed, still it was not unconditionally received, but, on the contrary, a receipt was given reading as follows:

"Received from Mrs. Mary Embert $2.52 being in arrears on Certificate No. _____ which the applicant desires the Society to revive.

"Under no circumstances will the Society be liable under said certificate until the certificate has been revived on the book of the Society and the money credited in the Premium Receipt Book belonging to said Certificate."

A reading of our opinion in that case shows clearly that we felt then, just as we do now, that, but for the condition contained in the receipt of the premium, a waiver would have been effected. We said:

"Plaintiff contends that the acceptance of the three months' arrears constituted a waiver of the forfeiture clause and cites a number of authorities to this effect. If the acceptance had been unconditional, these authorities would have been apposite, but it was conditioned upon satisfactory evidence of insurability being furnished the Sovereign Commander and conditioned further that at the date of revival the member is in good health."

In the Taylor case, supra, the facts in no way resembled those of the case at bar. There, after a lapse of 28 days, reinstatement was applied for and granted, with the stipulation that the policy should not afford protection for the results of disease contracted during the 28-day period. Plainly there is no analogy between that case and this one.

We feel that the premium was paid before the death of the assured and that defendant has waived its right to demand strict formal compliance with the policy stipulation with reference to reinstatement.

The judgment appealed from is annulled, avoided and reversed and there is now judgment in favor of plaintiff and against defendant for $230, with legal interest from judicial demand, and for all costs.