## CREASE v. LIBERTY INDUSTRIAL LIFE INS. CO.

### No. 4580.

Court of Appeals of Louisiana. Second Circuit.

Dec. 1, 1933.

Fink & Fink, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

TALIAFERRO, Judge.

Defendant issued a policy of life insurance to Mariah Luther on November 10, 1930, wherein plaintiff, her daughter, was designated beneficiary. The insured died of cancer on August 16, 1932, after an illness of from six to eight months. Defendant declined to pay the amount of the policy to the beneficiary because, as it alleges, for nonpayment of weekly premiums or dues of 25 cents, for more than four weeks immediately prior to the insured's death, the policy lapsed, and ceased to be in effect.

The case was tried on this issue in the lower court. Plaintiff's demand was rejected, and she appealed.

The policy sued on contains the following pertinent provisions:

"All premiums are payable at the Home Office of the Company, but may be paid to an authorized representative of the Company; such payments to be recognized by the Company must be entered at the time of payment in the premium receipt book pertaining to this policy. If for any reason the premium be not called for when due it shall be the duty of the policy holder before said premium shall be in arrears four weeks, to bring or send said premium to the Home Office of the Company. Should the Insured die while the premium on this policy is in arrears for a period not exceeding four weeks, the Company will pay the amount of insurance provided herein, subject to the conditions of the policy; but after the expiration of such period of grace the Company's liability shall cease, except as herein provided."

This limitation on the defendant's nonliability under the policy, after premiums have not been paid for a period of more than four weeks, is disclosed from the following stipulation therein:

"If this policy lapse for non-payment of premium, it will be reinstated within one year from the date to which premiums have been duly paid, upon payment of all arrears, provided evidence of the insurability of the Insured satisfactory to the Company be furnished; but such reinstatement shall not take effect unless at the date thereof the Insured is living and in sound health. Provided, that the consent of the Company to such revival must appear by the endorsement upon the face of the policy by the President of the Company. And that there shall be no liability whatever under this contract for any disability or death resulting from accident occurring or any illness contracted prior to the date of the endorsement on the face of this policy."

It appears that on August 15, 1933, when the insured was in a dying condition, and when the premiums on the policy were six weeks in arrears, plaintiff's husband appeared at defendant's office in the city of Monroe, La., and insisted upon the clerk therein accepting from him a tender of $1.25 to be applied on these past-due premiums, and entering same in the premium receipt book of insured. She accepted the money and issued a conditional receipt to the insured. It contains this statement: "The same (refer-

ring to the payment) shall be credited on the premium book fifteen days after date should the member be in sound health; otherwise the amount shall be returned to said member." She declined to enter this payment in the premium receipt book, as was the custom when premiums were regularly and timely made. About mid-evening of that day plaintiff's husband, after considerable effort to locate him, got in touch with defendant's local collecting agent at his home, and he insisted upon the receipt book being noted to show said payments. This was done by the agent, with full knowledge of the issuance of said conditional receipt; but he informed plaintiff's husband that there was yet one premium in arrears, and that the policy would have to be surrendered to him to be sent in to the company to be considered for reinstatement. This agent was not then aware of the insured's physical condition, he says, but was advised by this man, acting for her, that the health of the insured was good. The policy was sent to the home office for reinstatement, as therein provided, but reinstatement refused.

Plaintiff's position is that the payments on premium account made by her husband for the insured the day before she died, in view of the course of conduct of defendant with respect to accepting tender of premiums in arrears, was effective, served the purposes desired, and that defendant has waived its right to invoke the literal provisions of the policy to defeat plaintiff's claim for the amount thereof. The premium payment record shows that a majority of the premiums when paid were past due from one to twenty-three days. The premiums due on January 25, 1932, and on February 1 and 8, 1932, were paid on March 9th, some six weeks after the January 25th premium was due; and the premiums due February 15, 22, and 29, 1932, were paid on March 23, 1932. Shortly after these last three premiums were paid, the policy was sent in to the home office for reinstatement, and was reinstated and returned to the insured. Plaintiff knew this had been done, and why it had been done. Premiums thereafter were paid within the grace period until June 20th. The next premium fell due June 27th. It was not paid until July 27th, thirty days after falling due. No other payments were made or tendered until August 15th.

It is true that there is a well-established rule that: "Any agreement, declaration, or course of action, on insurer's part, leading insured honestly to believe that by conforming thereto forfeiture of policy would not be incurred, followed by due conformity, estops insurer from insisting upon forfeiture." But before estoppel will be enforced against the insurer it must certainly appear that the "course of conduct" depends not on a solitary instance of its apparently passive purpose to waive the terms of the contract relative to forfeiture thereof, but upon several, a series, of such instances, amounting to a custom; and the rule finds no application where the insurer, within a few days after accepting premiums which were more than the grace period overdue, requires that the policy be surrendered to its home office for its affirmative action. Such action of the insurer negatives the inference which could otherwise be drawn from the acceptance of premiums long overdue. It brings home to the insured, and the beneficiary with knowledge, that in the future the terms of the policy requiring premium payments within four weeks, if forfeiture thereof is to be avoided, will be enforced; and where it appears, as in this case, that thereafter the payment of one premium was accepted after it was due for more than four weeks, this isolated instance of the disregard of the forfeiture provisions of the policy by the insurer does not establish a custom, or course of conduct, which should have induced insured to honestly believe that her rights would be preserved to her regardless of the time she paid her premiums. And the insurer's purpose not to disregard or waive the forfeiture provisions, now discussed, was accentuated when its clerk who accepted belated payment of premiums issued a conditional receipt, as appears herein, expressly stating that the amount paid would be credited only in case the insured was found to be in sound health. Of course, this could not be done as she was then dying. For nonpayment of premiums timely, the policy forfeited.

There are many cases reported wherein the rule we have quoted above was discussed and applied, or rejected. We do not think the present case falls within the line wherein the rule was found to be applicable, but that it falls within the rule announced and enforced in the cases we shall now discuss:

In Embert v. Sovereign Camp, W. O. W., 2 La. App. 140, the insured was in arrears three months when payment was made. The policy contained provisions very much like those in the policy in the present case with respect to reinstatement after having lapsed for nonpayment of premiums timely. The payment was accepted by defendant conditionally, as in the case at bar, and the conditions were not met. It was argued in that case that acceptance of the three months' arrears constituted a waiver of the forfeiture clause, but the court was not impressed with this contention, saying: "If the acceptance had been unconditional, these authorities would have been opposite, but it was conditioned upon satisfactory evidence of insurability being furnished the Sovereign Commander and conditioned further that at the date of revival the member is in good health."

The payment of the arrears in that case, as in the present, was only one of the essential

conditions precedent to the policy's revival. The condition of insured's health was of primary importance to the insurer, and evidence that it was sound was the other essential.

In Brown v. Peoples Industrial Life Ins. Co., 16 La. App. 10, 132 So. 241, a case very similar to the present one was considered by the Orleans Court of Appeal. The syllabus, reflecting the facts and the court's holding, reads:. "Insurer's conditional acceptance of overdue premiums on lapsed industrial life policy held not waiver of right to effect reinstatement by affirmative action only."

We quote the following part of the opinion pertinent to the position we have taken in this case: "The law with reference to waiver by an insurance company of its right to insist that reinstatement shall not be effected, except by affirmative action on its part, has been discussed by us on several occasions, notably in Bush v. Liberty Industrial Life Ins. Co. [15 La. App. 269], 130 So. 839, in which case we held that a company of this kind may establish a custom which will lead an insured or a beneficiary to believe that the strict requirements of the policy will not be insisted upon. We believe, however, that the principle announced in the Bush Case is not applicable to the situation which confronts us here because the evidence shows that in the instant case no custom such as is contended for by plaintiff was established."

In Bush v. Liberty Industrial Ins. Co., 15 La. App. 269, 130 So. 839, 840, the court held that acceptance of premiums on morning of day insured died, which had been in arrears for approximately sixteen weeks, whereas only four weeks' grace was allowed in the policy, without requiring that other provisions of the policy be complied with, operated a reinstatement of the policy and a waiver by the insurer of the forfeiture clause therein. But in that case the facts found by the court may easily be differentiated from those we are dealing with. This appears from the following excerpt from the opinion:

"Plaintiff's counsel concedes that the legal contention can be decided in favor of his client only by our holding that the actions of the company on this and prior occasions, in accepting, without formal acknowledgment and without formal reinstatement of the policy, premiums more than four weeks in arrears, had established a custom under which plaintiff was justified in believing that, in case of delinquency existing four or more weeks, the formal requirement that the payment of the overdue premiums must be made directly to and accepted by the company, and that a reinstatement stamp must be placed on the policy itself, had been and would be waived.

"The evidence leaves no room for doubt that on four prior occasions the premiums had not been paid over periods of at least four consecutive weeks, and that in each such case, when the overdue payments were finally made, they were accepted and entered on the books of the company without any suggestion that the policy must be brought in for formal reinstatement."

In that case the policy was never requested or surrendered for reinstatement. The premiums were accepted regularly without question, even when due for more than four weeks.

We are not unmindful that forfeitures are not favored in the law, and, as stated in New York Life Insurance Co. v. Eggleston, 96 U. S. 572, 577, 24 L. Ed. 841, "Courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture," but to justify a court in declaring a forfeiture waived by the insurer, it should reasonably appear that such was the intention of the insurer, expressed or implied. But, as in this case, where it is undisputed that the policy was once reinstated after overdue premiums were paid, and that the last premiums were only accepted conditionally, their effect being dependent upon the insured's physical condition being sound, certainly disproves any suggestion or inference that there was any intention on part of insurer to waive the benefits accruing to it under the forfeiture clause.

Judgment affirmed.