## ANDERSON v. LIFE & CASUALTY INS. CO. OF TENNESSEE.

### No. 15027.

Court of Appeal of Louisiana. Orleans.

Jan. 7, 1935.

Harry R. Cabral, of New Orleans, for appellants.

Hugh M. Wilkinson, A. Miles Coe, Fred W. Oser, Harry Nowalsky, and Geo. M. Leppert, all of New Orleans, for appellee.

JANVIER, Judge.

This is a suit for the proceeds of a policy of life insurance issued by defendant, Life & Casualty Insurance Company of Tennessee, on the life of Charles Giles. Plaintiff, the mother of deceased, was named beneficiary. Defendant company admits that the policy was issued, but contends that before it had been in existence three years it lapsed because of the failure, for four consecutive weeks, to pay the premiums stipulated for.

There was judgment below for the amount sued for, to wit, $103, with interest at 6 per cent. from August 5, 1932, until paid. Defendant has appealed.

The record shows that the policy, bearing the No. A-5847178, was permitted to lapse, but it is the contention of plaintiff that subsequently there was a reinstatement, after which the insurer continued to accept premiums. The insurer admits that after the lapse many payments were made to and accepted by it, but it maintains that these amounts so paid did not constitute premiums on the said policy, but were, in fact, rendered to and accepted by it as premiums on a new policy issued on the life of the said Giles after the original policy sued on had lapsed. Plaintiff meets this charge with a denial that there was a second policy.

The insurer also contends that, because of the provisions of section 10 of the policy, there could have been no reinstatement without a formal revival thereof evidenced by the stamping on the face of the policy itself of the fact and the date of revival. Section 10 reads as follows: " * * * When premiums are paid on policies more than four weeks in arrears, they shall not be credited to the policy, whether entered in the premium re-

ceipt book or not, until this policy is officially revived. Premiums delinquent for more than four weeks may be received simply for the purpose of making application for the revival of the policy. A separate receipt shall be given for same and the policy which is lapsed shall be sent to the home office of the company, which shall have the right, at its option, to revive same, and if revived, that fact and date of revival shall be stamped upon the policy. If the policy is not revived, the premiums paid for purpose of revival shall be returned, upon his demand, to the policy holder. There shall be no liability whatever under this contract for any disability or death resulting from an accident occurring, or illness contracted or commencing prior to the date of the revival endorsement on said policy."

In rebuttal of this contention, plaintiff asserts that the special requirement that evidence of revival must be stamped on the policy itself had been waived by the company by its acceptance of premiums after the policy had lapsed.

▌There can no longer be any doubt that continued acceptance by an insurer of payments tendered as premiums on a lapsed policy must be construed as a waiver of the right of the insurer to insist upon formal requirements as to reinstatement or revival. See Jones v. First Nat'l Life, Health & Acc. Ins. Co., 8 La. App. 691, and Bush v. Liberty Industrial Life Ins. Co., Inc., 15 La. App. 269, 130 So. 839. In the Bush Case the exact question now under discussion was presented and decided adversely to the insurer. The policy stipulation involved in that case was the same as that with which we are now concerned. There we said:

"It was stipulated in the policy that failure to pay premiums for four consecutive weeks should effect the lapse thereof and that payment thereafter of the premiums in arrears should not be considered as reinstating the policy, unless, on the policy itself, the company should place a stamp agreeing to the reinstatement. * * *

"The evidence leaves no room for doubt that on four prior occasions the premiums had not been paid over periods of at least four consecutive weeks, and that in each such case, when the overdue payments were finally made, they were accepted and entered on the books of the company without any suggestion that the policy must be brought in for formal reinstatement. * * *

"It appears to us that a clear waiver has resulted and that the principles announced in New York Life Insurance Co. v. Eggleston, 96 U. S. 572, 577, 24 L. Ed. 841, and in Gunther et al. v. New Orleans Cotton Exchange Mutual Aid Association, 40 La. Ann. 776, 5 So. 65, 2 L. R. A. 118, 8 Am. St. Rep. 554, govern this feature of the case. In the Eggleston Case, the court said:

" 'We have recently, in the case of Knickerbocker L. Insurance Co. v. Norton, supra, 96 U. S. page 234, 24 L. Ed. 689, shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.' "

▌Therefore, if plaintiff can show that payments were repeatedly made to and accepted by the insurer after the policy in question had lapsed, and that these payments were made and accepted as premiums on that policy, then only one conclusion can be reached, and that is that the policy sued on had been revived and was effective and in full force at the time of the death of the insured.

In proof of such payments, plaintiff produced and offered in evidence thirteen receipts, all issued by defendant company, all of which evidenced payments made by Charles Giles to defendant company between January, 1931, and February 16, 1932. Nine of the said receipts are made on forms intended to be used where application for revival is made and four on forms apparently provided for use where new applications for insurance are involved, but on none of them is a policy number shown, and defendant, seeking to destroy their effect, maintains that they evidence payment, not on the policy sued on, but on the other policy, which it contends was issued later, but which also was allowed to lapse. But defendant has produced no records of any kind to show the issuance of another policy than the one sued on, except an application, which was excluded below because of defendant's inability to prove that it had been signed or executed by the insured.

In explanation of its failure to produce any such records to show how the thirteen payments were applied by it, defendant ten-

dered evidence to the effect that it destroyed all its records with reference to both the policies, because both had lapsed.

We cannot but feel that there must have been records to show the issuance of the second policy, if there was one, and to show that the payments made were accepted as premiums on the second policy, if such policy had, in fact, been issued, and we conclude that the defendant's failure to produce any such proof is sufficient to tip the scales against it and to justify the conclusion on this disputed question that there was, in fact, no such second policy, and that the amounts paid were paid as premiums on the original policy, and that the acceptance by the insurer of these premiums evidenced a waiver of its right to insist upon formal reinstatement, and also evidenced the fact that the policy sued on was in full force and effect at the time of the death of the insured.

We therefore conclude that the judgment appealed from was correct.

Application is made for an increase in the amount by 10 per cent., due to the alleged fact that the appeal was taken merely for the purpose of delay and was frivolous. We do not believe that the appeal was taken for such purpose, and there is in the record sufficient to justify the view that defendant and its counsel were serious in seeking a reversal of the judgment rendered below.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.

Affirmed.