**JOHNSON v. SOVEREIGN CAMP, W. O. W.**
No. 1504.

Court of Appeal of Louisiana. First Circuit.
Oct. 3, 1935.

W. S. Rownd, of Hammond, for appellant.

Carroll Buck, of Amite, for appellee.

ELLIOTT, Judge.

Mrs. Pelesia Johnson, widow of John N. Johnson, deceased, brought suit against Sovereign Camp of the Woodmen of the World on an insurance policy for $1,000. She alleges the death of her husband; that he was a member of said order in good standing at the time of his death; that she is named as the beneficiary in the policy, and defendant's refusal to pay.

The defendant Sovereign Camp of the Woodmen of the World for answer admits the issuance of the policy and that plaintiff is named as the beneficiary, but denies the alleged indebtedness and sets out reasons why it claims that the policy is not enforceable.

There was judgment in favor of the defendant rejecting plaintiff's demand. The plaintiff has appealed.

The policy sued on was issued to John N. Johnson on April 26, 1916, and plaintiff was therein named as the beneficiary. Under the stipulations of the policy, the policy itself, and the constitution, laws, and by-laws of the order, all parties to the policy are parties to one and the same contract. Printed matter offered in evidence, called the "Constitution, Laws and By-Laws" of the order, designated as section 109 (a), contains a provision which reads as follows:

"Every member of this society shall pay to the clerk of his camp one annual assessment or one monthly installment of assessment as required in Section 56, which shall be credited to and known as a Sovereign Camp Fund, and he shall also pay such camp dues as may be required by the laws of his camp. He shall pay any additional Sovereign Camp Fund dues or either which may be legally called. If he fails to make any such payments on or before the first day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

Section 56, too long to quote, states the various sums to be paid beneficiaries and does not alter in any way the provision quoted from section 109.

Sections 110, 116, and 118, etc., contain provisions which provide for payment before the 1st of the following month and the effect of installments received after that time, when the member is not in good health at the time the delinquent installment is received, and that if good health does not continue for 30 days after the delinquent installment is received, that no reinstatement results and the policy remains null and void. Such is the agreement of the parties, and the only question for decision is whether the stipulations in the policy and constitution, laws, and by-laws, which together form the policy contract, shall be given force and effect.

The evidence shows that John N. Johnson was delinquent in his dues for the month of April, 1933, and under the policy compact and agreement the delinquency ipso facto resulted in his suspension; the suspension being effective on May 1, 1933. On May 12, 1933, he remitted his dues for April, May, and June, 1933, but it was too late to restore him to membership and good standing, because he was seriously sick at the time the April installment became due and had been sick a long time prior thereto. He remained continuously sick and died June 11, 1933, which was less than thirty days after the installment was received. Under the showing made

the policy had ceased to have effect and was null and void at the time John N. Johnson departed this life, unless the delinquent payment 12 days late had the effect of restoring the life of the policy. In Anderson v. Life & Casualty Insurance Co. of Tennessee (La. App.) 158 So. page 270; Jones v. First National L. H. & A. Insurance Co., 8 La. App. 691; Bush v. Liberty Industrial Life Insurance Co., 15 La. App. 269, 130 So. 839; Florence Ross v. Unity Industrial Life Insurance Co., 162 So. 86, recently decided by this court; and other cases to the same effect could be mentioned, payments were received late but were credited when received on the books of the company as the payment of the dues on the policy, and the policy was not declared forfeited on that account.

It was found from the evidence that it had become the custom in the particular case to receive and credit the payment of dues on the policy as payments after the payment had become delinquent; that this custom had existed in the particular case for such a length of time that it was not thought to be fair and reasonable, that the insurance company could avail itself of a late payment as ground for forfeiture when it had been all along receiving late payments and applying them on the policy, keeping it alive for the purpose of collecting dues and only urging the last late payment preceding the death of the party insured as ground for defense in a suit on the policy. In cases of that kind the court found that the custom of the parties had become the law of the case.

But in this instance we do not find the existence of such a custom. The plaintiff herself testifies that her husband was never late in his payments:

"Q. Had your husband ever been delinquent in paying his dues before that? A. Never had. Always paid up his dues in advance."

The question had reference to the sole delinquent payment which defendant urged against the enforcement of the policy sued on. This payment was due April 30, 1933, but was not received until 12 days thereafter. This was the only late payment recorded against John N. Johnson, who had been a member for some 17 years previous to his death. As no custom of late payments existed, the terms and stipulations of the policy must have effect. The agreement of the parties is the law of the case.

The situation of this case, in principle, is very much like that which existed in Thomas v. First National Life, Health & Accident Insurance Co. (La. App.) 157 So. page 409. In that case the court held that no custom to the contrary having been established on the subject of late payments, the terms and stipulations of the policy must have effect, and that the policy sued on in that case had become null and void as a result of a payment made after the stipulated time had expired, where the insured was seriously sick at the time of the delinquency, and had remained sick and was in the same state of health at the time the installment was received and continued sick until his death.

We think the present case was correctly decided.

Judgment affirmed; plaintiff-appellant to pay the cost in both courts.