## RATCLIFFE v. ACACIA MUT. LIFE INS. CO.

### No. 17130.

Court of Appeal of Louisiana. Orleans.

March 27, 1939.

Leon A. Pradel, Jr., of New Orleans, for appellant.

Eugene M. Thore, of Washington, D. C., and Richard B. Montgomery, Jr., of New Orleans, for appellee.

McCALEB, Judge.

On March 1, 1934, the defendant company issued to Edwin Ruggles Ratcliffe a policy of life insurance wherein it bound itself to pay to the plaintiff, the named beneficiary thereunder, the sum of $1,000 upon the death of the assured. Ratcliffe died on September 10, 1934, and demand for the proceeds of insurance was timely made upon the insurer by the plaintiff. Upon the defendant's refusal to pay, she instituted this suit for recovery under the contract.

In due course, the defendant appeared and resisted liability on the ground that the policy lapsed on September 1, 1934, for nonpayment of the premium for the month of August of that year. It further set forth, in the alternative, that, should the court hold that the policy was reinstated, then, in that event, the reinstatement was null and void because, under the terms and conditions of the contract, the insured was required to furnish satisfactory evidence of insurability.

The case proceeded to trial on these issues and resulted in a judgment in favor of the defendant. Plaintiff has appealed from the adverse decision.

The trial in the lower court was limited to one issue—i.e., did the policy lapse for nonpayment of the stipulated monthly premium?

The facts of the case are as follows:

The policy, which was issued on March 1, 1934, provided for the payment of a monthly premium of $3.14. Premiums for March, April, May, June and July were duly paid. During the month of July, the insurance company mailed to the insured a notice for the premium falling due on August 1st. The policy accorded to the insured a period of grace of 31 days within which payment of a monthly premium could be made without penalty of forfeiture and, hence, the August premium could have been paid by him on or before September 1, 1934. This premium was never paid by the assured.

Plaintiff contends that neither she nor her husband, the assured, ever received the notice mailed by the defendant concerning the premium for the month of August. We are satisfied, however, from the evidence adduced at the trial that the notice for this premium was duly mailed by the insurance company and that it was received either by the plaintiff or her husband. Plaintiff admits, however, that she did receive during August a notice of the company respecting the September premium and she asserts that this premium was paid by her on September 1st. She maintains that, since she paid a premium on September 1st, it is immaterial whether the payment was designated as the August or September premium because the policy did not lapse for the nonpayment of the August premium until after that date. We quite agree with this contention and, if it be true that the company received a premium payment on September 1st, it is liable under the policy.

Plaintiff testified that, on September 1, 1934, she instructed a friend of hers named Mrs. Cookmeyer to go to the local office of the defendant company and pay the monthly premium upon the policy; that she gave to Mrs. Cookmeyer the sum of $3.14 with which to make the payment and also the notice which had been sent to the assured by the defendant advising him that the September premium would be due on that date; that Mrs. Cookmeyer made the payment in accordance with her request and that later in the day the former brought to her the premium notice marked "paid G. C. Franks". Plaintiff's testimony is corroborated by the deposition of Mrs. Cookmeyer, who states that, in accordance with plaintiff's instructions, she repaired to the office of the defendant company on September 1st, some time after 12 o'clock; that it was a Saturday afternoon and that the defendant's office was closing. She further states that Mr. Franks, manager of defendant's local office, was present and received from her the $3.14 and marked the premium notice "paid". Both Mrs. Cookmeyer and the plaintiff are positive that the payment was made on September 1st, asserting they are sure of the date because the Monday following September 1st was Labor Day. They also testify that, at the time the premium was paid, Mr. Ratcliffe, the assured, was in good health; that he did not become ill until September 6th and that he died on September 10th.

Contra, the insurance company maintains that the premium was not paid until September 8, 1934, at which time the policy had lapsed. Mr. Franks stated that Mrs. Cookmeyer came to the defendant's office on Saturday, September 8th, some time after 12:00 o'clock when the office had closed for the transaction of business; that he was still there but preparing to leave for his home; that Mrs. Cookmeyer asked him to accept the payment of the premium and that he at first refused to do so because he was unable to examine the company's records which were locked in the office safe. He further says that he did not know the combination to the safe; that a Miss H. B. Buckholz, cashier of the office, was the only person who knew the combination; that Mrs. Cookmeyer asked him to please accept the premium and thereby save her another trip to the company's office; that, in order to accommodate her, he accepted the $3.14 payment and marked the September premium notice "paid". He further declares that, at the time he received the payment from Mrs. Cookmeyer, he was not aware that the insurance policy had lapsed for the nonpayment of the August premium; that on Monday morning, September 10th, he turned over the premium money to Miss Buckholz, the cashier; that she examined the records of the company and ascertained that the policy had lapsed and that, immediately upon being advised of that fact, he mailed to the assured a conditional receipt for the premium. The testimony of Mr. Franks is fully corroborated by that of Miss Buckholz, the cashier of defendant's local office.

Mr. Franks is very positive that the payment of the premium was made on September 8th and not on September 1st, and

he explains that it could not have been made to him on September 1st as he was absent from New Orleans on that day, being engaged in attending a fishing trip near Slidell, Louisiana, which had been sponsored by the local office of the defendant company. His assertion respecting his absence from the city on September 1st is amply supported by the testimony of Miss Buckholz, Otto A. Vantuyl and Miss Margaret Jamison. It is further shown by the defendant that, due to Mr. Franks' absence on September 1st, it was necessary for Miss Buckholz to certify a certain draft drawn upon the defendant by a beneficiary of one of its matured policies and that, although Miss Buckholz was not authorized to sign this certificate, the National Bank of Commerce of New Orleans nevertheless honored the draft in order to facilitate the company in making an immediate payment to the beneficiary of that particular policy.

After analyzing the conflicting evidence adduced by the opposing litigants, we are convinced of the truth of the statements of the defendant's witnesses and we experience no difficulty in resolving that the payment of the premium was not made until September 8, 1934, after the policy had lapsed and at a time when the assured was in a dying condition. This was the view of the district judge and we fully concur in his finding on this question of fact.

In this court, counsel for plaintiff seems to concede the correctness of the conclusion of the district judge with respect to the date Mr. Franks received the premium but he maintains that this tardy payment is tantamount to an acceptance of the premium by the company and that it is now estopped from asserting a forfeiture. We find no merit in the postulation. In the first place, we feel that the evidence adduced below warrants the conclusion that the plaintiff and her witness, Mrs. Cookmeyer, attempted to perpetrate a fraud upon the defendant by swearing that the premium was paid on September 1st when they knew that it was not paid until September 8th which was after the insured had been taken seriously ill and was in a dying condition. Under these circumstances, plaintiff is not in a position to invoke an estoppel against the defendant for the doctrine is founded upon equity and cannot be used to the advantage of those who are in bad faith. See 19 American Jurisprudence, Section 86.

Moreover, even if we were to assume that the plaintiff's motives were innocent, we would nevertheless be impelled to hold that the defendant is not estopped by its agent's mistake in accepting the premium since she has not shown that she has been prejudiced by the error or that she was lulled into the belief that the tardy payment reinstated the lapsed policy. To the contrary, she has always contended that the premium was timely paid. In the recent matter of Williams v. Unity Industrial Life Insurance Co., 181 So. 210, we stated that the doctrine of estoppel is applicable to this type of case only where the insurance company has adopted a previous course of conduct (by accepting past due premiums on the policy) which was such as to lead the insured to honestly believe that a forfeiture of the policy would not be incurred. Here, the company did nothing to cause the plaintiff to believe that, if she did not pay her premium on time, it would not invoke the forfeiture provided by the contract.

Finally, counsel contends that the company, by Mr. Franks' acceptance of the premium, waived its right to insist upon forfeiture of the contract. We do not think so. In the first place, Mr. Franks had no authority to waive the requirements of the company respecting a reinstatement of the policy. And, assuming, for the sake of discussion, that the company would be responsible for acts done by him within the apparent scope of his authority, notwithstanding the stipulation to the contrary in the policy, there is nothing, with respect to his conduct in this matter, to exhibit that he relinquished the defendant's rights under the contract. On the contrary, he was without knowledge of the fact that the policy had lapsed at the time he received the payment of the September premium from Mrs. Cookmeyer. His acceptance of the money was merely an accommodation to Mrs. Cookmeyer and as soon as he was able to ascertain, by inspecting the books of the company, that the August premium was in default, he mailed to the assured a conditional receipt. Waiver is generally defined as an intentional relinquishment of a known right. It may be either expressed or implied. There is no room for the application of that doctrine in this case as the circumstances surrounding the payment of the

332

premium are such a's to refute the conclusion that the conduct of Mr. Franks operated as a forbearance by the company of its right to claim a forfeiture of the policy.

The cases cited by counsel for plaintiff, in support of his argument on waiver and estoppel, are inapposite to the facts presented in this matter. The conclusion we have reached is fully sustained by the views expressed in Crease v. Liberty Industrial Life Ins. Co., La.App., 151 So. 89; Brown v. People's Industrial Life Ins. Co., 16 La.App. 10, 132 So. 241; Embert v. Woodmen of the World, 2 La.App. 140, and Williams v. Unity Industrial Life Ins. Co., supra.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.