Defendant, a fraternal benefit society which has a lodge system and transacts its business without profit and in the interest of its members and their beneficiaries, issued through its Pecan Camp No. 207 at Natchitoches, Louisiana, a certificate for $2,000 of date March 31, 1932, on the life of Soleyman G. Soleyman.
The insured died February 4, 1939. Thereafter proofs of death were timely furnished defendant by his widow, who is the designated beneficiary and the plaintiff herein, but payment of the certificate's proceeds was refused. This action is for the recovery thereof.
It is alleged in the petition that at the time of death all payments provided for by the certificate had been made and that the contract was in full force and effect.
The denial of liability on the part of defendant, as its answer shows, is predicated on the contention that the certificate was void, when the insured died, by reason of his previous suspension from membership.
This defense is assailed by plaintiff in a formal plea of estoppel, to which reference will hereinafter be made.
Under the judgment of the district court defendant was condemned to pay to plaintiff the aforementioned amount of $2,000 *Page 468 
with 6% per annum interest thereon until paid; and it appealed.
The issuance of the insurance certificate was in consideration of the warranties contained in the application of the insured for membership in the defendant society, and in further consideration of his payment of $2.28 on or before the last day of each month thereafter. Also, it was issued and accepted subject to the conditions therein recited, and to the provisions of the society's constitution, laws and by-laws and any subsequent amendments thereto. The agreement between the parties, therefore, embraced not only the expressed stipulations of the certificate but also all of the other referred to provisions. Section 8 of Act 115 of 1906, as amended by Act 256 of 1912.
According to Section 63 of said constitution, laws and by-laws the required monthly installments are due in advance; and a member becomes suspended and his beneficiary certificate is void if he fails to make any such payment on or before the last day of the month for which it is payable. However, any member so suspended may, as stated in Section 65, "within three calendar months from date of his suspension again become a member of the society by the payment of the delinquent installment, or installments, provided he is in good health at the time of such payment and remains in good health for thirty days thereafter"; and "such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member * * *."
In Section 66 of those regulations, it is stated that: "The retention by the society of any installment paid by or for any person after he has become suspended in order to again make him a member, shall not constitute a waiver of any of the provisions of this Constitution, Laws and By-Laws, or any estoppel upon the society."
Further respecting the matter of waiver, Section 82 provides:
"No officer, employee or agent of the society or the Sovereign Camp, Head Camp or of any Camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this Constitution or these Laws, nor shall any custom on the part of any Camp or any number of Camps — with or without the knowledge of any officer of the Society — have the effect of so changing, modifying, waiving or foregoing such laws or requirements."
Decedent was a member of Pecan Camp of the defendant society prior to July, 1931. For some reason not disclosed by the record, his membership ceased during that month. He was not readmitted until March 31, 1932, the date of the certificate under consideration; and at that time he was cautioned by an officer of the local camp about failing to pay his dues and assessments within the prescribed period. From that date through November, 1938, or for more than six and one-half years, each required monthly installment was paid to defendant, although not always before the expiration of the respective months as hereinafter shown, and was duly accepted by defendant.
The December, 1938, installment was also paid by the insured to the financial secretary of the local camp, but not during that month. This payment was made January 16, 1939, or sixteen days following commencement of delinquency and nineteen days prior to the member's death which occurred February 4, 1939. The failure of decedent to satisfy such installment during the applicable month is the basis for the defense contention that he was under suspension from membership, reinstatement had not been effected, and the certificate was of no effect when his life expired. In opposition thereto, plaintiff asserts under her plea of estoppel that practically all of the monthly installments, since the issuance of the certificate, were similarly paid; and she urges that the acceptance by defendant of the numerous delinquent payments constituted a waiver of the contractual provisions relating to suspension and that it is now estopped from urging a forfeiture of the insurance.
Forfeitures are not favored, and courts readily seize hold of any circumstances that indicate a waiver of them. New York Life Insurance Company v. Eggleston, 96 U.S. 572, 24 L.Ed. 841.
Furthermore, as is well stated in Cyclopedia of Insurance Law (Couch) Section 681, it is the general rule "that if an insurance company or its authorized agent, by its habits of business, or by its acts or declarations, or by a custom to receive overdue premiums or assessments without objection, or by a custom not to exact prompt payment of the same, or, in brief, *Page 469 
by any course of conduct, has induced an honest belief in the mind of the policy-holder, which is reasonably founded, that strict compliance with a stipulation for punctual payment of premiums or assessments will not be insisted upon, but that the payment may be delayed without a forfeiture resulting therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy or certificate expressly provides for forfeiture for nonpayment of premiums as stipulated, and even though it is also conditioned that agents cannot waive forfeitures, or the policy provides that receiving overdue premiums is merely an act of courtesy."
The announced doctrine is likewise expressed in 29 American Jurisprudence verbo Insurance, Section 860; and it has been recognized in numerous cases in the jurisprudence of this state. Gunther v. New Orleans Cotton Exchange Mutual Aid Association 40 La.Ann. 776, 5 So. 65, 2 L.R.A. 118, 8 Am.St.Rep. 554; Bush v. Liberty Industrial Life Insurance Company, Inc., 15 La.App. 269, 130 So. 839; Fairfax v. International Order of Twelve, 19 La.App. 35, 139 So. 494; Crease v. Liberty Industrial Life Insurance Company, La.App., 151 So. 89.
Introduced and filed in evidence in the instant case were sixteen receipts issued to decedent by the local camp, each of which disclosed the payment of the represented installment during the month following that in which it was payable. Additionally, there is testimony of a former financial secretary of the camp, based on official records, showing similar satisfaction of eleven other installments. These 27 payments, and there is no doubt in our minds that many others of like nature took place, were made on various dates throughout the period of the certificate's existence; and such delinquent transactions constituted, we think, the establishment of a custom whereby defendant would not require prompt payment of the contracted installments, and render applicable the above discussed doctrine of waiver and estoppel. Defendant, by its course of conduct in accepting and retaining the several late payments, lulled the insured into the belief that the described method of settlement was sufficient to protect his insurance; and it will not now be permitted to take advantage of a situation which it aided in creating.
The fact that the insured was admonished, when the certificate issued, to pay his installments promptly is of no moment. The course of action pursued by the parties, which estops defendant herein, commenced shortly thereafter and continued throughout the years that followed.
We are mindful of the above quoted provision of the constitution, laws and by-laws that stipulates against the waiver or changing of any of the requirements of the defendant society. Regarding this, there is an almost uniform rule that "policy provisions which limit the power of insurance agents or other representatives of the insurer to waive conditions of the policy or restrict the manner in which waivers may be made do not supersede the recognized principles of the law of waiver and estoppel, and are not conclusive so as to prevent the officers or agents of the insurer through whom it must act in the transaction of its business, and the conduct of its affairs, from binding the insurer by a waiver of a condition or from creating an estoppel against it to assert a breach of condition in avoidance of the policy. In other words, a nonwaiver clause may itself be waived."
It is argued by defense counsel that the doctrine of estoppel founded on a course of conduct is applicable to regular insurance companies but not to fraternal benefit societies, in which group defendant belongs. This argument is clearly untenable for in Wilson v. Sovereign Camp, Woodmen of the World, 179 La. 372,154 So. 28, 30, our Supreme Court held this same defendant to be estopped, by reason of its conduct, from claiming a forfeiture; and in the opinion, the following language was used:
"Forfeitures are not favored in law, and in cases of insurance, where the conduct of the company has been misleading, the ordinary principles of estoppel apply and preclude the company from setting up the forfeiture."
Defendant relies on Johnson v. Sovereign Camp Woodmen of the World, La.App., 163 So. 180 and several other cited decisions. In none of these did there exist a custom regarding delinquent payment such as in the instant case, and therefore each is inapplicable. Dictum in the opinion of the Johnson decision, rendered by the First Circuit Court of Appeal, recognizes the applicability of the estoppel principle when such custom prevails. *Page 470 
The judgment of the district court, under the authority of Act 17 of 1920, provided for interest of 6% on the amount awarded. The mentioned legislation requires all life insurance companies to pay death claims within sixty days from the death of the insured, and in the event of failure to do so, without lawful cause, the policy shall bear interest at the rate of 6% per annum. Defendant complains of this interest award with the mere statement that "it is clear that that statute has no application in this case." We know of no reason that would justify our holding it to be inapplicable.
For the reasons assigned, the judgment is affirmed.