REGAN, Judge.
■Plaintiff, Mrs. Catherine Morlier, the named beneficiary in a contract of insurance issued to her son, Whitney F. Morlier, instituted this suit against the defendant, Atlas Life Insurance Company, Inc., endeavoring to recover the sum of $1,000, the double indemnity benefit thereof.
The defendant answered and denied that it was indebted unto plaintiff in any sum whatsoever for the reason that the plaintiff fraudulently, attempted to secure a reinstatement of a lapsed policy at a time when the insured was no longer an insurable risk.
From a judgment in favor of the plaintiff as prayed for, the defendant has prosecuted this appeal.
The record reveals that on December 20, 1948, Whitney F. Morlier, obtained a policy of insurance from the defendant company in the amount of $500, which provided for double, indemnity in the event the insured met with an accidental death. On August 6, 1951, the policy lapsed for nonpayment of premiums and was reinstated on February 4, 1952, by a revival application form signed by'the insured and the payment of the premiums which were in arrears. The policy again.’lapsed on February 18, 1952. The insured was critically injured as the result of an automobile accident at 11 o’clock p. m. on November 7, 1952, and died on November 8, 1952, at about 1 o’clock p. m. On Saturday morning, November'8, 1952, about four and one-half hours prior to the death of her son, the plaintiff visited the. offices of the defendant company and paid the premiums which were in arrears, but surreptitiously refrained from divulging the fact that her son, a patient in Charity Hospital, was critically ill. The defendant insists that their clerk, who accepted the payment of $19, the amount of the premiums which were in arrears, informed plaintiff, while she was in the course of entering the payments in the receipt book,, that, in conformity with the contract and the rules of the company, the policy could not be revived until the insured signed and the company approved a revival application form. This, of course, is denied by the plaintiff, who maintains that although she was fully aware of the fact that a revival application form was an essential element in reinstating the contract of insurance, the clerk entirely omitted reference thereto.
The only question posed for our consideration is whether the defendant by accepting the payment of the insurance premiums which were in arrears, without first obtaining a revival application form executed and signed by the insured, unconditionally reinstated the policy ?
The contract of insurance stipulated:
“Reinstatement. — If this policy shall lapse for the non-payment of premium and shall not be surrendered for its cash surrender value, it may be reinstated at any time within one year from the date to which premiums have been duly paid upon acceptance of evidence of insurability satisfactory to the company, and payment of all premiums in arrears.'
In support of plaintiff’s contention that the defendant' by accepting the payment of the premiums which were in arrears un *193 conditionally reinstated the policy, counsel cite the following cases: Hayes v. Louisiana Industrial Life Insurance Company, La.App., 155 So. 778; New York Life Insurance Company v. Eggleston, 96 U.S. 572, 24 L.Ed. 841; Bush v. Liberty Industrial Life Insurance Company, 15 La.App. 269, 130 So. 839; Williams v. Unity Industrial Life Insurance Company, La.App., 181 So. 210; Anderson v. Life & Casualty Insurance Co. of Tenn., La.App., 158 So. 270; Soleyman v. Woodmen of the World, La. App., 3 So.2d 466.
The defendant, on the other hand, maintains that the plaintiff fraudulently attempted to reinstate the lapsed policy on November 8, 1952, at about 8:30 a. m., which was at a time when the insured was a critically ill patient confined to the Charity Hospital as the result of an automobile accident, from which he died several hours later and, therefore, he was no longer an insurable risk and the conditional acceptance of the premiums by their clerk did not constitute a revival of the policy inasmuch as the required revival application form had never been executed and signed by the insured nor subsequently approved by the company.
Peter J. Panno, the defendant’s manager and secretary, related, and his testimony is not disputed, that when a policy of insurance lapsed and the insured desired reinstatement, the premiums, which were delinquent, were accepted and a “supervisor” was then sent to the insured’s home to have a revival application form signed and witnessed by the supervisor. The record reflects that this is precisely what occurred the. only other time this policy lapsed and, as we have related hereinabove, plaintiff reluctantly admitted that she was fully cognizant of this fact.
The cases relied on by the plaintiff are all predicated on the rule well established in our jurisprudence to the effect that any pri- or course of conduct on the part of the insurer in accepting past due premiums on the policy, which custom honestly causes the insured to believe that by conforming therewith, forfeiture of the policy would not be incurred, estops the insurer from insisting upon a strict compliance with the letter of the contract of insurance. In the instant case, however, the defendant established no course of conduct which would have led either the insured or his mother to honestly believe on the morning of November 8, 1952, when she paid the premiums that were in arrears, that this constituted a- reinstatement of the policy without the necessity of having the insured execute a revival application form evidencing “insurability satisfactory to the company”. On the contrary, the only other time that the policy had lapsed, plaintiff admitted that a revival application form was executed and signed by her son and, therefore, the policy was reinstated. Furthermore, on direct and cross-examination, the plaintiff conceded that she was fully aware of the necessity of her son executing a revival application form in order to effectively reinstate the policy.
In Brown v. Peoples Industrial Life Insurance Company, 16 La.App. 10, 132 So. 241, 242, the facts were quite analogous to those which we are now considering. In that case we said:
“A reading of the evidence in this case makes possible no other conclusion than that this policy had lapsed, and that, after the insured was attacked by the disease which proved fatal, payments of the premiums were tendered, without any statement showing that the insured was at that time in anything but good physical condition. The premiums were received after the insured entered the hospital, practically in a dying condition. The insurance company had no knowledge of his condition and did not affirmatively or finally agree to reinstatement and had not established a custom of reinstatement by mere acceptance of premiums.”
We are convinced from the context of the record that the beneficiary, who made the delinquent payments, was told by the clerk that they were accepted subject to the company’s right to refuse reinstatement of the policy.
 The $19, representing premiums paid defendant was not returned nor depos *194 ited in court and, therefore, plaintiff should have judgment for this amount.
For the reasons assigned the judgment appealed from is amended by reducing the amount thereof to $19 and as thus amended it is affirmed; plaintiff to bear the costs of this appeal, all other costs to be paid by defendant.
Amended and affirmed.