## FRICK v PRUDENTIAL INS CO

Ohio Appeals, 2nd Dist, Montgomery Co

No 1445. Decided July 14, 1937

Jacobson & Durst, Dayton, for plaintiff-appellant.

Mattern & Sheridan, Dayton, for defendant-appellee.

### OPINION

By THE COURT

This case had its origin in the Municipal Court of the City of Dayton, where the plaintiff filed his statement of claim setting up two causes of action, relating to two separate insurance policies written by the defendant-appellee, upon the life of Helen I. Frick. deceased.

The allegations of each cause of action

are substantially the same, and are to the effect that in consideration of a premium of 30c per week during life, the defendant issued its policy to Helen I. Frick, on her life, in the sum of $360.00, payable on her death to her executor.

It is alleged that the policy provided that if the insured died while the premium on said policy was in arrears for a period not exceeding four weeks, the defendant would pay the amount of insurance provided therein.

That said Helen I. Frick died on the 16th day of December, 1933, (afterwards corrected to December 15th) at which time the premium was in arrears for a period not exceeding four weeks.

A statement of defendant admitted execution of the policies, each in the sum of $360.00, in consideration of the payment of 30c per week on each policy; and that the policy provided that if the insured died while the premium was in arrears for not exceeding four weeks the defendant would pay the insurance provided therein.

For a second defense, it is alleged that each of the two policies provided that it was to remain in force, and that the amount thereof was to be paid upon the death of the insured only on condition of the payment of the premium on or before each Monday, during the continuance of said policy, and that the premiums were to be paid at the Home Office, or to an authorized representative, but to be recognized must be entered at the time of payment in the premium receipt book belonging to the policy; that if for any reason the premium was not called for it should be the duty of the policy holder, before said premium shall be in arrears four weeks, to bring said premium to the Home Office of the Company, or to one of its district offices.

The "period of grace" provided that should the insured die when the premiums are in arrears not exceeding four weeks, the Company would pay the insurance. "But after the expiration of said 'period of grace' the Company's liability under this policy shall cease, except as herein provided."

The provision as to re-instatement was to the effect that if the policy lapsed for non-payment of premium it would be reinstated within one year from the date to which premiums have been paid, upon the payment of all arrears. "Provided evidence of insurability of the insured satisfactory to the Company be furnished, and such re-instatement shall not take effect unless at the date thereof the insured is living and in sound health."

It is alleged that the last weekly premium was paid on each of said policies on the 25th day of September, 1933; that thereafter on the 29th day of October, 1933, said policies and each of them lapsed and ceased to be of any effect because of the non-payment of premiums for four consecutive weeks.

It is further alleged that on the 15th day of December, 1933, the plaintiff (who was the husband of decedent) came to the office of the defendant and paid the sum of $10.80; that it received said sum and issued to plaintiff its temporary receipt therefor; that defendant did not accept said sum as payment of the premiums, and did not then or thereafter enter the same in any premium receipt book; that neither plaintiff nor any other person furnished any evidence of the insurability of the said Helen I. Frick at the time of said payment, or at any other time, and that in fact said Helen I. Frick was not insurable or not in sound health, but was at the time confined with a fatal illness which resulted in her death on December 15th, 1933; that plaintiff knew the condition of Helen I. Frick at the time he tendered said payment, and fraudulently concealed said facts from the defendant, and that by reason of the facts stated neither of the policies were reinstated as they had lapsed on the 24th day of October 1933, and neither was in force at the time of the death.

To this statement of defense, a reply was filed, admitting the provisions of the policy, but denying that either of them lapsed on the 24th day of October, 1933; admitting that the insured died on the 15th day of December, 1933, but denying all other allegations.

As a further reply, plaintiff says that at the various and numerous times from the 31st day of October, 1932 until the death of said Helen I. Frick, the two policies were in arrears for premium payments for more than four weeks, and that the defendant upon all of these occasions received and accepted premium payments after said four weeks arrearage, without requesting any further action, documents or evidence of any kind.

The plaintiff denies that the policies lapsed at any time before the death of Helen I. Frick, both because of the facts stated and because of the terms of the policies.

The Municipal Court found in favor of

plaintiff. and that there was due plaintiff the sum of $720.00.

A motion for new trial was filed setting up errors complained of, which motion was overruled.

The petition was filed in the Court of Common Pleas, setting up the errors complained of, and praying that the judgment be reversed.

The Common Pleas Court found that there were errors apparent upon the face of the record, and reversed the judgment of the Municipal Court.

Thereupon notice of appeal to this court was given by the defendant upon questions of law.

The plaintiff-appellant files in this court an assignment of errors, in which he asserts that the judgment of the Court of Common Pleas is contrary to law. and prays that it may be reversed, and that of the Municipal Court affirmed.

The bill of exceptions exhibits the policies, disclosing the provisions for the payment of premiums, the period of grace, and for re-instatement substantially as set out in the pleadings.

Plaintiff's exhibit D is a receipt dated December 15, 1933. acknowledging receipt of $10.80 "in full payment for nine weeks premium * : * the premiums are paid to and including week of November 27, 1933."

The provision of the policy in reference to the payment of premiums provides that they are payable at the Home Office, but may be paid to an authorized representative of the company. "And further provides such payments to be recognized by the Company must be entered at the time of payment in the premium receipt book belonging to the policy."

Plaintiff's exhibit C is the receipt book belonging to two policies in question. as well as to two upon the life of the husband. The payment for each policy is 30c per week, and several payments shown by the book are for $1.20 per week. This book indicates that W. H. Kramer, 905 Third National Bank Building, was the agent of the Company, who usually collected the premiums, and the book shows the entries made by him. The book indicates that on a number of occasions to-wit, on May 29, 1933, July 3, 1933, September 4, 1933, and October 9, 1933, payments were made after the lapse of the four weeks of the "period of grace" provided by the policy. Arrearages were respectively May 29, 1933. five weeks, July 3, 1933 five weeks, September 4, 1933, five weeks. and October 9, 1933, six weeks. On December 15th, the date upon which the husband of the insured appeared at the office of the Company, the premiums were in arrears for eleven weeks.

Counsel for plaintiff-appellant makes it clear that he does not claim that the policies were re-instated by reason of the payments made on December 15th, but that as a matter of fact they never had lapsed, nor been forfeited by reason of the delayed payments, due to the conduct of the defendant as to receipt of payments after the period of four weeks.

The provision as to the "period of grace" as heretofore referred to, provided that if the insured die while the premium is in arrears for not exceeding four weeks. the Company will pay, but that after the expiration of said "period of grace" the Company's liability shall cease, but that if after the policy has lapsed for non-payment, it, will be re-instated within one year, upon payment of arrearages and a showing that the insured is in sound health.

At none of the times above referred to where premiums have been paid at a period beyond the four weeks of grace, has the Company required a showing of good health upon the part of the insured.

In Cyclopedia of Insurance Law (Couch) Vol. 3, §681, is the discussion of "Effect of Custom or Usage." Among other things it is stated:

"And undoubtedly it is the general rule that if an insurance company or its authorized agent, by its habits of business, or by its acts of declarations, or by a custom to receive overdue premiums or assessments without objection, or by a custom not to exact prompt payment of the same, or, in brief, by any course of conduct, has induced an honest belief in the mind of the policy holder, which is reasonably founded, that strict compliance with a stipulation for punctual payment of premiums or assessments will not be insisted upon, but that the payment may be delayed without a forfeiture resulting. therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy or certificate expressly provides for forfeiture for nonpayment of premiums as stipulated * * *."

In the case of Insurance Co. v Eggleston, 96 U. S. 572, it is held:

"Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured to believe that, by conforming thereto, the for-

feiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, although it might be claimed under the express letter of the contract."

See also: Ballah v Ill. Life Assn., 160 Ill. App. 603; Life Insurance Co. v Givvens, 77 SE (Georgia) 203; Hawkins v Woodman Accident Assn., 204 SW (Missouri) 566.

The plaintiff claims that the Company by its course of action over a large portion of the period during which these policies were in force, justified the belief upon the part of the insured that the forfeiture of the policies by the non-payment of the premium, strictly within the limits of the policy, would not be insisted upon, and that at the time of the over due payments prior to that of December 15, the policies had not lapsed.

At the time of the payment on December 15, 1933, the premiums were in arrears eleven weeks. The "grace" allowed by the policy is four weeks, and, if established by usage by the Company in reference to these policies, was five and six weeks.

Can it be said that because the Company had extended the "period of grace" of four weeks allowed by the policy itself to six weeks, through its custom of dealing with the insured, it is thereby estopped from showing that the policy had lapsed on December 15, 1933, when the payment was made of premiums to and including November 27, 1933?

The death occurred on December 15, 1933, within the four weeks "grace period" from November 27th. It is urged by the defendant that the premiums paid on December 15, 1933, could not bind the Company, by reason of the provisions of the policy that such payments to be recognized by the Company must be entered at the time of payment in the "premium receipt book belonging to the policy."

The evidence discloses the fact that on December 15th, and for sometime prior thereto the decedent was seriously sick with double pneumonia, and that upon that date the husband, who is now plaintiff, went to the office of the Company, having with him the premium receipt book belonging to the policy, and asked for Mr. Kramer, the field agent, to whom prior premiums had been paid. There was in the office a young lady who waited upon Mr. Frick, and upon his inquiry for Mr. Kramer, stated that he was not there, and made inquiry as to what Mr. Frick wanted. To this he replied that he wanted to pay his insurance. Thereupon the receipt was given, which is plaintiff's exhibit D, and is as follows:

"THE PRUDENTIAL INSURANCE CO. OF AMERICA
Incorporated under the laws of the State of New Jersey.
Edward D. Duffield, President
Home Office, Newark, N. J.
December 15, 1933.
"Received from Edw. Frick . . . . . . . . Ten . . . . . . . . 80/100 Dollars, in full payment for 9 weeks' premiums on Industrial Int. Mo. Prem. polic 4 Nos. 92943973 etc. The premiums are paid to and including week of Nov. 27, 1933, $10.80.
R. M. Bower, Clerk
Dayton, O., No. 2 District."

The defendant claims that this receipt, by reason of the provision of the policy that "payments to be recognized by the Company must be entered at the time of payment in the premium receipt book belonging to this policy," was not as a matter of fact a binding receipt of the money tendered by the insured.

We are not in sympathy with this view. The policy provides that all premiums are payable at the Home Office of the Company, but may be paid to an authorized representative of the Company. The Home Office of the Company is in New Jersey, and manifestly the insured was not expected to pay his money there. He did pay it to an authorized representative of the Company, at its branch office in Dayton. He took with him the premium receipt book and asked for Mr. Kramer. Mr. Kramer not being in, his money was received and the receipt given, which bore upon its face the assurance that the payment was for nine weeks premium on the four policies, and that the premiums were paid to November 27, 1933.

The policy holder did all that he was required to do, as far as tendering the money was concerned. The money was accepted and the receipt given, and we are unable to conclude that because it was not entered in the field book that it was not a binding payment to the Company, if the policy was then in force.

The more serious question arises when we consider the consequences if the policy had lapsed by reason of non-payment of premiums beyond the period of six weeks.

The policy could be re-instated even though it had lapsed, provided evidence of insurability satisfactory to the Company was furnished, and the insured was living and in sound health. She of course was not in sound health and died within an hour and one-half after the payment of the money.

This information was not conveyed to the Company by the husband, his excuse for not doing it was that he was not asked.

It is manifest if the policy █ had lapsed such action upon the part of the husband did not reinstate the policy.

The case of Nat'l Life and Acc. Ins. Co. v Ray, 117 Oh St 13, is, in our judgment, conclusive upon this point. It is there held that payment of premiums upon the lapsed policy does not re-instate it, where the insured at the time of the payment was not as a matter of fact in good health.

It will be observed that the plaintiff there elected to proceed upon the claim that the policy was revived, and the court states:

"It clearly appears the issue of waiver passed entirely out of this case, as well it might, because there is no evidence in the record to support the claim of waiver."

In the instant case the plaintiff takes the position opposite to that taken in the Ray case, to-wit, that the policy never lapsed and consequently the question of its reinstatement is not an issue. If the policy did not lapse, then the requirements that upon its reinstatement there should be an exhibition of good health, has no bearing upon the case.

The question then remains whether or not the policy lapsed by reason of the non-payment of the premiums for eleven weeks, five weeks longer than the receipt of any former overdue premiums.

If the policy had not lapsed, by reason of the custom of the Company, then the present sickness of the insured would in no way prevent the policy being continued by payment of premiums.

The Company could not take the position that because of the admitted death of the insured they did not accept a premium which, under the terms of the policy, or the custom of the Company, could be paid.

Such a rule would place the Company in the very distinct position of advantage of accepting overdue premiums as long as the risk was good, but refusing to accept them when death was near.

Counsel for defendant points out the action of plaintiff, the husband of the insured, in going from the bedside of his wife, and paying the deferred premiums without giving notice to the Company of his wife's perilous position, as indicated the single conclusion that the husband was not relying upon his right to pay the premium under the custom of the Company, but was endeavoring to deceive the Company by concealing from it the condition of the wife.

Counsel for plaintiff claims that the receipt given by the Company's agent showing that the premiums were paid to November 27, 1933, would be binding upon the company no matter what might be the right of the Company at that time to declare the policy forfeited—the claim being, in brief, that when it gave the receipt and accepted the money such action waived the right to declare the policy void, and the company is now estopped from asserting that right.

We are not of the view that the Company would be bound by a receipt if it was obtained from it by fraud and concealment of a vital condition, the knowledge of which was in the possession of the husband, but withheld from the Company.

This is the holding in the Ray case, above referred to.

But that does not dispose of the question as to whether the Company is estopped from claiming a lapse by its prior acts.

If the policy was in force, as claimed by the plaintiff, and had not lapsed, the obligation of the Company to pay was the same as admitted by the policy, but there limited to a four week period of grace.

It is very pertinently urged by counsel for defendant that if the past action of the Company establishing a custom of receiving premiums that were six weeks overdue, instead of four weeks permitted by the "grace" clause, and that if this custom is now to be extended to premiums that are eleven weeks overdue, there would be no limit to the extension of time thus granted to the insured.

Counsel for plaintiff rely very strongly on the case of Kozloski v Prudential Ins. Co., 95 N. J. Law 101, 113 Atlantic 135, which involves the same Company, and practically the same policy as here under investigation.

It is there held:

"Under life policies providing that, 'if the insured died while the premium was in arrears not exceeding four weeks, the company would pay the amount provided,

but that after the expiration of such period of grace, its liability should cease and the policy lapse, failure to pay premiums in the time allowed would or would not create a forfeiture, at the option of the company, which could take advantage of the provision, and declare a forfeiture or waive the forfeiture and receive payments after the expiration of the four weeks provided, in which case the policy is revived and continued to be a valid and outstanding obligation against the insurer."

It is further held:

"Through payments on life policies made after the death of the insured were received by the insurer in ignorance of the fact, the insurer had the option, when it learned the real situation, to return the premium so received and declare the policy void under its provisions, or it could waive such right and retain the premiums, and by so doing it elected to keep the policies in force, though the insurer did not formally notify insured's representative how it had exercised its option."

That case differs from the one at bar in the important condition that the company there accepted and kept the premium that was tendered, after the death of the insured.

The case simply holds that the company had the option of either accepting the premium and continuing the policy, or declaring the policy void and returning the premium.

In the case at bar the premium was tendered back, and upon suit being brought was paid into the court. Had the Company kept the $10.80, then of course it would have elected to continue the policy, and would have been responsible.

In that vital respect the case cited differs from the case at bar.

Making full allowance for the principle that the policy should be construed most strongly against the Company, and that the law abhors forfeitures, we cannot escape the conclusion that the Company's acceptance of the past due premiums on four separate occasions, would not estop it from showing that on December 15th, the premiums were overdue eleven weeks, and that the policy had lapsed, and any payment then made was subject to the condition of the policy.

The policy distinctly states "such reinstatement shall not take effect unless at the date thereof the insured is living and in sound health." The action of the husband in going to the office of the Company, and there tendering the premiums without disclosing the condition of his wife, was a fraud upon the Company, and the receipt given for such premiums, while not ineffective because it was not entered in the premium book, was still accepted under such conditions as would permit the Company to repudiate it because given under conditions that had the Company been advised of the facts as they existed, it would not have given the receipt, but would have declared the policy forfeited by reason of the non-payment of the premiums.

Taking this view, we hold that the Court of Common Pleas did not err in reversing the judgment of the Municipal Court.

Judgment accordingly.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.